# CASES DETERMINED

AT THE

## January Term, 1897.

---

BEURHÄUS and another, Executors, Appellants, vs. COLE and another, Appellants, and THE CITY OF WATERTOWN, Respondent.

| 94  617|
|d103 515|

*November 4, 1896 — January 12, 1897.*

*Wills, construction of: Devise to city to support library and home for aged and poor: Unauthorized purpose: Trusts: Perpetuities: Charitable and literary corporations.*

1. A city has power to accept by devise either real or personal property for the purpose of establishing and maintaining a public library, and for the purpose of providing a home for residents thereof who are both aged and poor; especially under a charter giving the common council power "to acquire by . . . devise . . . lands for . . . any other public purpose."

2. Under a will in which, after certain specific bequests, the testator devised all the remainder of his estate to trustees to pay over the income to his wife and son during their lives, and upon the death of the survivor of them to convey all the property to a city for certain specified purposes, a provision in the clause defining the powers and duties of the trustees prohibiting the sale of certain parcels of land is *held* not to be applicable after said lands shall have been conveyed to the city by such trustees.

3. A subsequent provision in such a will that a certain residence be fitted up by the city for an old ladies' home "if it shall be deemed advisable," and that the trustees convey the same to the city as soon as convenient, is *held* to have been eliminated by the decision of the city that such a course was not advisable. Such residence thereupon dropped back into the general trust estate, to be dealt with by the trustees in accordance with the previous provisions of the will.

Beurhaus and another vs. Cole and others.

4. Although a city may have no authority either under its charter or at common law to maintain a business men's club room, yet a devise to it for the establishment and maintenance of "a public library and business men's club room" is not rendered void by the lack of such authority, where it was plainly the intention to make the library the important element of the trust and the club room a comparatively unimportant accessory.

5. A devise to a city for the establishment and maintenance of a public library and for the establishment and maintenance of a home for the aged and poor people of the city is an active trust, sufficiently definite to be capable of enforcement; and, in the absence of any direction to the contrary, one half of the fund should be applied to each trust purpose.

6. Although in this case no specific authority was given the city by the will to sell the real estate which might be conveyed to it by the trustees, yet such power is *held* to arise from its provisions by necessary implication, especially as the city was authorized to purchase real estate and erect a library building out of personal property and securities, and the testator left only a small amount of personal property and the trustees were prohibited from selling the greater part of the real estate.

7. A city is not a literary or charitable corporation within the meaning of sec. 2039, R. S., permitting the absolute suspension of the power of alienation in grants or devises for the sole use and benefit of such corporations.

8. A provision that a certain tract of land forming part of a devise to a city for the establishment and maintenance of a home for the aged and poor of the city should be used as the location for the home, and a devise of another tract to be used by the city as a driving park and agricultural grounds, are *held* to perpetually suspend the power of alienation as to such tracts, and to be void in their creation under sec. 2038, R. S.

APPEAL from a judgment of the circuit court for Jefferson county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

This is an action in equity for the construction of the will of John W. Cole, deceased, late of the city of *Watertown.* *Beurhaus* and *Humphrey* are the executors, duly qualified and acting; and *Oscar A. Cole* and *Eliza C. Cole* are respectively the son and widow of the deceased, and his only heirs at law. Cole, the testator, died February 17, 1894,

and his will was duly probated April 4, 1894. By the first clause of the will the testator made the usual direction for the payment of the expenses of his last sickness and funeral and all his just debts. By the second clause he gave to his wife and son in fee certain described real estate in the town of Lake Mills and the city of *Watertown;* also $5,000 of bank stock; with provisions for compensation in money in the case of the sale of the real estate or bank stock before his death. The remaining provisions of the will are as follows:

"Third. I hereby give, devise and bequeath unto my executors hereinafter named, all the rest and residue of my property and estate, both real and personal, in whatever it may consist or wherever situated at the time of my decease, in trust, for the following purposes: To have the full charge, management, and control thereof; and I direct that they shall keep all buildings insured, and in a proper state of repair, and to collect and receive the rents, issues, and profits thereof, and also my interest money which may become due and payable on all securities and investments belonging to my estate, and to pay the costs of said repairs and insurance, and the annual taxes and assessments that may be levied and assessed upon my estate, and expenses of administering said trust, out of the money so collected for rents and interest; and the balance of the money so collected and received for rents and interest as aforesaid, I hereby direct shall be paid to my beloved wife, *Eliza C. Cole,* and to my son, *Oscar A. Cole,* from time to time, as the same are collected, one-third part thereof in addition to the sum of six thousand dollars and accumulated interest thereon, being about eight thousand dollars, heretofore advanced by me to my said wife, which is intended and to be received by her in lieu of her dower right in my estate, the same to be paid regularly as it is collected during her natural life, and the remaining two thirds of said rents and interest moneys to

be paid to my son, *Oscar A. Cole.* And after the decease of my wife I will and direct that the whole amount of said rents and interest moneys be paid by my trustees hereinafter named to my son, *Oscar A. Cole,* in case he survives my wife. I will and direct that this trust shall continue for the purposes above mentioned for and during the natural life of my wife, *Eliza C. Cole,* and my son, *Oscar A. Cole.*

" Should the persons hereinafter nominated and appointed as executors and trustees, or any of them, die, or refuse to accept the trust, the vacancy thus caused shall be filled by appointment by the county court, or the judge thereof, for Jefferson county, who is hereby authorized and requested to make the same subject to the approval of the parties interested in my estate.

" I hereby direct that my said executors or trustees shall receive such compensation for their services, to be paid by or retained out of my estate, as the county judge of said county may from time to time fix and allow.

" I further will and direct that my lot on the southeast corner of Second and Main streets, being lot three (3) in block ten (10) in the First ward of the city of *Watertown,* my twenty acres in the Seventh ward of said city, and my two farms near Marshall, in Dane county, Wisconsin, shall not be sold nor incumbered, but other property not herein otherwise provided or disposed of may be sold, if deemed advisable.

" I also give and devise unto my son, *Oscar A. Cole,* during his lifetime, the free use of my farm, described as the east half of the northwest quarter of section twenty-eight (28), in the town of Emmet, county of Dodge, and the state of Wisconsin, which is commonly known as the Race Track.

" After the death of my wife and my son, *Oscar A. Cole,* and the trust heretofore created by and under this will has been fully carried out and performed, I then will and direct that my trustees hereinafter named, or their successors, shall

convey the title to and turn over the possession and control of all real estate and personal property which may have come into their possession as my trustees, unto the city of *Watertown*, in the state of Wisconsin, in trust for the following purposes, and upon the conditions hereinafter set forth:

" First.   The establishment and maintenance of a public library and a business men's club room.

" Second.   The establishment and maintenance of a home for aged and poor people of the city of *Watertown;* and it is my will and wish that the twenty acres of land I own in the Seventh ward of said city be used as a location for said home.

" I also will and direct that my residence on Clyman street, in the First ward of the city of *Watertown*, be fitted up by said city for an old ladies' home, if it shall be deemed advisable.   I will and direct that my executors and trustees shall, as soon after my demise as is convenient, convey and transfer title and possession of said homestead, consisting of all of block one (1) of Pritchard's Second addition to *Watertown*, except a piece in the northwest corner heretofore conveyed to Harriet Giles, to the said city of *Watertown*.

" The said city of *Watertown* is hereby authorized and directed to purchase suitable grounds upon which to erect a library and club house building, to erect and pay for the same out of any funds that may be in its hands in the nature of personal securities or money.

" I also will and direct that my farm just north of the city, and commonly called the Race Track farm, shall be used by the city as a driving park and agricultural grounds after the death of my son, *Oscar*.

" In event the said city shall decline to accept said property in trust for the purposes above named, then my trustees are directed to sell said property, and divide the proceeds thereof among my next of kin according to law.

" It is the wish and expectation of my wife and son, *Oscar*,

to make ample provision for my grandchild, the daughter of my said son, *Oscar*, and for that reason I make none in this will.

"I do hereby appoint my son, *Oscar A. Cole*, C. B. Skinner, and Christian May, all of the city of *Watertown*, executors and trustees of this, my last will and testament, with full confidence that they will faithfully and prudently execute the trust hereby reposed in them."

Following the attestation clause of the will was the following certificate:

"*Eliza C. Cole*, wife of John W. Cole, and *Oscar A. Cole*, his son, all of the city of *Watertown*, and state of Wisconsin, do certify that they have read the foregoing last will of the said John W. Cole, and know its contents, and do consent to the same, and will accept without contention the provisions therein made for them.

"Witness our hands this nineteenth day of July, 1892.

"Oscar A. Cole,
"Eliza C. Cole."

Upon the trial the will and the inventory and appraisal were put in evidence. The inventory contains the bank stock of $5,000 and $195 of other personal property. All the rest of the property is real estate, and particularly mentioned in the will. The homestead, however, on Clyman street, devised to the city in trust for an old ladies' home, is not in the inventory. The whole amount of real estate in the inventory is appraised at $74,300. Of this the farm in Lake Mills, appraised at $8,000, and lots 6 to 12, block 15, and lots 5 to 9, block 16, Cady's addition to *Watertown*, appraised at $2,000, are specifically devised to *Eliza C.* and *Oscar A. Cole*. Lot 3, block 10, is appraised at $20,000, the twenty acres in the Seventh ward at $2,500, and the two farms in Dane county at $25,000, making a total of $47,500. The Race Track farm is appraised at $8,000, and the lots in Second ward are appraised at $8,800.

The evidence also shows that the executors submitted the following communication to the common council of the city, May 17, 1894:

"To the Common Council of the City of Watertown:

"The undersigned, executors of the last will of the late John W. Cole, respectfully call the attention of the common council to the provisions of said will which concern the city of *Watertown*. In the opinion of the undersigned, some action by the board is requisite as to the acceptance of the trust created by said will in respect to said city. The undersigned do not deem it necessary to mention specially the terms of said will, as they are informed that the city is in possession of a certified copy, and are consequently apprised of its contents."

This communication was referred to the judiciary committee of the council, which subsequently made the following report thereon to the council:

"Your committee on judiciary, to whom was referred a certified copy of the last will of John W. Cole, deceased, and the communication of the executors of said will of May 17, 1894, in regard to the same, respectfully reports as follows:

"Your committee submitted the will to the city attorney for a legal construction of the same, and from the opinion furnished (which is in writing) your committee comes to the conclusion that there are two separate and distinct provisions in said will, independent of each other, as affecting the city of *Watertown:* First, the devise of the homestead for use as an old ladies' home is a present consideration, while the devise of the other property to the city can only be considered after the death of *Mrs. Eliza C. Cole* and *Oscar A. Cole*. After fully considering the first devise to the city, your committee comes to the conclusion that the common council should not now fit up the homestead for the purpose named in said will, for the reason that the expense of fitting up and maintaining the home is too great a burden upon our

taxpayers. The law now places the support of the poor upon the county, and there is no good reason why this city should take a great share of this burden entirely upon itself. Your committee therefore submit the following preamble and resolution:

"Whereas, the late John W. Cole, of this city, has devised to the city of *Watertown* his homestead, and provided in his will that it may be at once fitted up for an old ladies' home, if it shall be deemed advisable, and whereas, the cost of fitting up and maintaining the same for the purpose mentioned is greater than the city can at the present time afford: Therefore, *resolved*, that the common council do not deem it advisable at the present time to fit up and maintain the said homestead for the purpose mentioned in said will."

The resolutions recommended were adopted by the council June 19, 1894. The devises and bequests in favor of the city were attacked by the heirs at law as invalid. The circuit court, however, held them all valid, and the heirs at law and the executors appealed.

For the appellants there was a brief by *L. B. Caswell* and *W. H. Rogers*, and oral argument by *Mr. Caswell*. They contended, *inter alia*, that, without any designation in the will or authority delegated to some one to determine who the aged and poor are, the trust is so indefinite and uncertain that it cannot be carried out without a liberal exercise of the doctrine of *cy pres*, not permitted in this state. *White v. Fisk*, 22 Conn. 50; *Estate of Hoffen*, 70 Wis. 524; *Levi v. Levi*, 33 N. Y. 103; *Trippe v. Frazier*, 4 Har. & J. 446; *In re Howe*, 1 Paige, 214; *Trustees v. Peaslee*, 15 N. H. 317; *Kain v. Gibboney*, 101 U. S. 362. The will fails to direct how much shall be used for the library and how much for the home. For this reason the trust must fail. *Beekman v. Bonsor*, 23 N. Y. 298, 306; *Chapman v. Brown*, 6 Ves. 404; *Harper v. Phelps*, 21 Conn. 270; Jarman, Wills, 338. The devise of the Race Track farm is in perpetuity and void.

*Ford v. Ford*, 70 Wis. 61; Redfield, Surrogates' Courts (4th ed.), 169; *Amory v. Lord*, 9 N. Y. 403, 415–420; *Jennings v. Jennings*, 7 id. 547; *De Wolf v. Lawson*, 61 Wis. 475. The devise of the homestead to the executors with directions to convey it to the city as soon as convenient for an old ladies' home, if valid, created only a passive trust. No duties in reference to this property are assigned to the executors, and the title vested at once, at the death of the testator, in the city, if it could vest at all. R. S. sec. 2075; *Sullivan v. Bruhling*, 66 Wis. 472; *Goodrich v. Milwaukee*, 24 id. 429; *Ruth v. Oberbrunner*, 40 id. 238; *Adams v. Perry*, 43 N. Y. 487.

*Harlow Pease*, for the respondent.

Winslow, J. Although the language of the will before us is somewhat confused, and the arrangement of the provisions illogical, careful reading of the entire document renders the general intent of the testator quite plain. The general intent or plan seems to us to have been as follows: *First*. The testator desired his widow and son to receive certain real estate, or its equivalent, in fee, together with $5,000 in certain specified bank stock. *Second*. He wished to place in the hands of his executors all his remaining property, in trust to manage, invest, and reinvest the same, paying over the income to his widow and son during their lives, as directed in the will, with power of sale of all real estate, save that lot 3, block 10, and the twenty acres in the Seventh ward of the city of *Watertown* and the two farms in Dane county were not to be sold or incumbered by the executors. By subsequent clauses this branch of the scheme was modified somewhat, apparently as the result of afterthought, so that the Race Track farm was taken out of the general trust during his son's life, and the free use thereof given to the son; and his homestead was to be conveyed at once to the city, to be fitted up by the city as an old ladies' home, if

the city deemed it advisable so to do. *Third.* After the death of his wife and son he desired his executors to convey to the city of *Watertown* all his remaining real and personal estate in trust for certain uses and under certain conditions, viz.: (1) That it should establish and maintain a public library and business men's club room, purchasing the grounds and building the building out of the funds of the estate; (2) that it should establish and maintain a home for the aged and poor people of the city, using the twenty acres of land in the Seventh ward as a permanent location therefor; (3) that it should permanently use the Race Track farm as a driving park and agricultural grounds. *Fourth.* In case the city declined to accept the property burdened with these trusts, he wished his trustees to sell it and divide the proceeds among his next of kin according to law.

The only questions before us on this appeal relate to the validity of the gifts to the city of *Watertown.* The principal contentions made by the appellants may be stated as follows: *First.* The direction in the will to the effect that lot 3 in block 10 in the First ward and the twenty-acre piece in the Seventh ward of the city of *Watertown* and the two farms in Dane county shall not be sold or incumbered suspends the power of alienation as to these parcels perpetually, and the devise to the city thereof is void, under secs. 2038, 2039, R. S. *Second.* The city has no power to accept the devises or perform the trusts attempted to be created by the will. *Third.* The trusts are mere passive trusts, and are not clearly defined in the will, and are too vague and uncertain to be enforced. *Fourth.* The city has already declined the devise of the homestead, and, so far at least as that parcel is concerned, it must be sold by the trustees and the proceeds divided among the next of kin. *Fifth.* The direction that the city shall use the twenty-acre tract as a location for the home for aged and poor people, and shall use the Race Track farm as a driving park and agricultural

grounds, amounts to an absolute suspension of the power of alienation in perpetuity, and hence the devises of those parcels to the city are void.

1. We shall spend but little time with the first of the foregoing contentions. Upon this point the circuit judge, in his opinion, very aptly says: "This clause forbidding the sale of these three parcels is contained in that part of the will relating to the powers and duties of said first trustees (i. e. the executors) while executing the trusts in favor of his widow and son, and does not apply after these trustees shall convey the title of these three pieces to the city of *Watertown*." With this construction of this clause of the will we entirely agree. It seems so obviously correct as to require no further elucidation. With this construction the objection to the validity of the devises on this ground necessarily falls, because the suspension of the power of alienation is measured by two lives in being, to wit, the lives of the widow and the son of the testator.

2. There can be little or no doubt as to the power of the city to accept by devise property, either real or personal, for the purpose of establishing and maintaining a public library, or for the purpose of providing a home for residents of the city who are both aged and poor. By sec. 931, R. S., the city had power to establish a public library and reading room. By sec. 1499, R. S., it is charged with the relief and support of its resident poor and indigent persons when they stand in need thereof. The principle is well established that a city may accept devises of property made to enable it to carry out any of its legal duties or powers, and such devise may be made to the city in direct terms, or it may be made in trust for such uses. 2 Dillon, Mun. Corp. (4th ed.), §§ 566, 567 *et seq*. In addition to this general common-law power, the charter of the city of *Watertown* provides that the common council shall have power " to locate, purchase sites, and let contracts for the erection and construction of public

buildings; to acquire by gift, grant, *devise*, donation, pur-
chase, or condemnation lands for *parks* and *any other public
purposes;* and to sell, dispose of, and convey the same."
Certainly there can be no question as to the power of the
city to accept devises of property made for the purpose of
aiding it in the performance of any of its public duties and
powers.

It might be a serious question whether the city has
power to fit up and maintain an "old ladies' home," but
it is not necessary to consider or decide the question, be-
cause the will, as we construe it, left it optional with the
city authorities whether they should take the homestead
immediately after the testator's decease, and fit it up for
this purpose. This option the city authorities exercised by
deciding that such course was not advisable. Thereupon
the homestead dropped back into the general trust estate,
to be handled by the trustees until the termination of the
trust in favor of the wife and son, and then to be deeded to
the city if still owned by the trustees in accordance with the
previous provisions of the will. Thus the scheme for an old
ladies' home has disappeared.

The direction *as to the use of the* Race Track farm as a
driving park will be considered under the fifth head. Thus
far we have found that there are two of the trusts laid upon
the city by the will which it has power to execute, and con-
sequently to receive property to aid it in such execution,
namely: (1) The establishment and maintenance of a pub-
lic library, and (2) the establishment and maintenance of a
home for aged *and* poor people of the city. The question
now arises whether it can establish and maintain a business
men's club room, and, if not, whether the trust for library
purposes is thereby invalidated. We have found no clause
of the charter of the city expressly or impliedly authorizing
the city to maintain such a room, nor do we know of any
authority holding that such a purpose is germane to any of

the objects of the corporation, and we think, upon principle, that it cannot be sustained. But the question whether the library trust is therefore invalidated is a different question, and one upon which we have received but little help from the briefs. The intention of the will seems quite plain that the public library is the important element of the trust, and the club room a comparatively unimportant accessory It is evidently to be but a *room* in the building to be erected for the library. Must the library devise fail because the testator has directed that one room of the building, which might easily be provided without appreciable addition to the expense, shall be occupied at times, free of rent, by a business men's club? Such a result would be a reproach to the administration of justice. It has been held that where a devise otherwise valid is inseparably coupled with a void devise, and is a mere accessory thereto, and the amount of the valid part cannot be ascertained, then both must fall together. *Chapman v. Brown*, 6 Ves. 404; 1 Jarman, Wills, *336. That, however, is not this case. The illegal part of this trust would require for its purpose an utterly inappreciable additional expense, if indeed it required any at all; and we do not think that, under such circumstances, the valid devise, especially one so greatly for the public good, should be avoided. The courts are always favorably disposed to the establishment of libraries and hospitals, and all of the public institutions whose purpose is to ameliorate the condition of mankind. Gifts for such purposes are supported, if possible. We hold, therefore, that the library scheme does not fail by reason of the fact that the city cannot maintain the club room.

3. The library trust and the trust for the aged *and* poor are both active trusts, and are sufficiently definite to be capable of enforcement. This is sufficiently established by the previous decisions of this court, and does not require elaboration here. *Dodge v. Williams*, 46 Wis. 70; *Webster v.*

*Morris,* 66 Wis. 366; *Sawtelle v. Witham, ante,* p. 412. The details as to character and cost of buildings, and the relative amounts to be spent in building and to be reserved as funds for maintenance, are ·evidently matters which the testator wisely left to the discretion of the proper city authorities. The trust property may not be received by the city for many years, and the circumstances may be very different at that time from what they are now.

We construe the will as authorizing the sale of any real estate by the city which the trustees may convey to it at the expiration of the first trust. Although there is no specific power to sell given, we think such power must result by necessary implication from the various provisions, especially the provision authorizing the city to purchase real estate and erect a library building out of personal property and securities. Inasmuch as the testator left substantially no personal property which was to go into the trust funds, and did not direct his trustees to sell any, but rather prohibited them from selling the greater part of the real estate, the inference that he expected the city to sell is quite conclusive.

The objection that the amounts which are to be used for the respective trust purposes are not fixed by the will is not tenable. Had there been a trust to collect rents and pay them over to two persons, without fixing the respective shares, we suppose there would be no doubt but that each would be entitled to receive one half. Such, we think, should be the rule here, and such we construe the will to mean; there being no words indicating that either trust is to have the preference.

4. This objection we have already considered and disposed of in the discussion of the second objection.

5. We come now to the last objection, namely, that the devises to the city of the twenty acres in the Seventh ward and the Race Track farm are void under secs. 2038, 2039,

because the power of alienation is perpetually suspended. This objection seems to us undoubtedly well taken. It is clear that the city is not a literary or charitable corporation organized for "their sole use and benefit;" hence, although the trusts are charitable in their nature, they do not come within the exceptions laid down in sec. 2039, and hence the absolute power of alienation cannot be suspended longer than two lives in being and twenty-one years thereafter. The evident intention of the will is that the twenty acres shall be perpetually used for the home for aged and poor people, and that the race track shall be perpetually used as a driving park and agricultural grounds. This plainly constitutes a future estate in each parcel with the power of alienation perpetually suspended, which, under sec. 2038, is void in its creation. This is plainly not a case where a fee has been devised and a repugnant condition attached, and where the condition is held void. *Zillmer v. Landguth, ante,* p. 607. But, as indicated, it is a future estate which illegally suspends the power of alienation, and hence the estate itself is void in its creation.

*By the Court.*— Judgment reversed, and action remanded with directions to enter judgment in accordance with this opinion. The costs and disbursements of all parties in this court and the circuit court shall be paid out of the estate, and the county court of Jefferson county will make such allowance to the parties for counsel fees as in the exercise of a sound discretion may be just.