REASONER ET AL. *v.* HERMAN ET AL.

[No. 23,390. Filed March 8, 1922.]

1. PERPETUITIES.— *Applicability of Rule.*— *Charitable Gifts.*— The rule against perpetuities applies to gifts for charity where there is no vesting of the corpus of the estate within the time allowed by law, but such rule can have no application after the corpus of an estate has vested for charity, as the very nature of a charity is a perpetuity. p. 652.

2. WILLS.—*Construction.*—*Vesting of Estates.*—The law favors the vesting of estates, and wills are construed as creating vested estates, if possible. p. 652.

3. CHARITIES.—*Charitable Bequests.*— *Construction.*— *Directions as to Management.*—Where a charity is involved in a testa-

mentary disposition of property, the courts, under the *cy pres* doctrine of liberal construction will be keen to discover whether the main purpose is charity, and, if it is, to treat the testator's plan of administration, not as condition precedent to vesting, but as a suggestion regarding the management; and, if his directions as to management are impracticable, unreasonable or unlawful, a court of equity will change testator's scheme to one that is practicable, reasonable and lawful. p. 652.

4. PERPETUITIES.—*Construction of Wills.—Intention of Testator. Charitable Bequest.*—Where a will expressly declared testator's desire to have his estate administered by trustees perpetually as a charity, and devised the property to the trustees for that purpose, *held* that the dominant intent of the testator was the establishment of the charity, and not the erection of a hotel building and accumulation of one-half the income therefrom, as directed by other items of the will. p. 653.

5. CHARITIES.—*Charitable Bequests.—Invalid Direction for Management.—Validity of Gift.*—Where a charitable gift is vested, a direction for accumulation, being for the management of the fund and not the essence of the gift, will not, even if invalid, affect the validity of the gift. p. 653.

6. CHARITIES.—*Perpetuities.—Charitable Bequests.—Impracticable Directions for Management of Charitable Trust.—Equitable Jurisdiction.*—Where testator's dominant purpose was to establish a charity, if the directions as to management designated by him to effect that purpose were impracticable and unprofitable, a court of equity will adopt a method of effectuating the testator's intention which is profitable and practicable, and, if the directed accumulation of income should become a public menace, a court of equity has the power to so limit such accumulation that it will not be a public menace and so that it will best subserve the charitable purpose. p. 654.

7. CHARITIES.—*Charitable Trust.—Construction.—Public Charity.*—Where testator devised property in trust for four classes of beneficiaries, disabled men, poor widows, deserted wives, and boys and girls needing means to provide their education, all of whom must be residents of the county in which testator lived, the classes specified were clearly charitable, their care being for the public benefit, and the persons benefited being vague, uncertain and indefinite, until appointed to receive the benefactions, and the classes, as near as may be, perennial. p. 654.

8. CHARITIES.—*Charitable Trust.—Construction.—Private Charity.*—A trust for the benefit of such of testator's brothers and sisters, their wives and husbands, and their children as may

be deemed by the trustees to need assistance, is purely a private, and not a public charity, and must fail.   p. 654.

9.   PERPETUITIES.—*Charitable Bequests.—Validity of Gift.—Time of Vesting.*—Where a class in whom a gift was to vest under the terms of a will was bound to fail, but it might not fail within the time allowed by law, the rule against perpetuities applies, since the application of that rule does not depend upon what actually happens, but what may possibly happen, estimated from the time of the taking effect of a deed or will. p. 655.

10.   EVIDENCE.— *Possibility of Issue.*— Where testator devised property in trust for the benefit of his needy brothers and sisters and their children, the law will not recognize that the possibility of beneficiaries having issue becomes extinct at any time during the lives of such beneficiaries.   p. 655.

11.   CHARITIES.— *Charitable Bequests.— Construction.— Preferences.*—Where a testator devised his property in trust for five classes of beneficiaries to whom the income might be given by the trustees, the first class specified being composed of needy relatives of testator, so that as to that class the bequest was a private charity, such gift could not be sustained as a mere preference to the relatives.   p. 655.

12.   WILLS. — *Construction.— Charitable Bequests.— Validity.—* Where testator in his lifetime had executed a deed of a testamentary character to trustees for the benefit of certain relatives who might be in need, but the deed failed to create a charity, and in his will, which purported to create a charitable trust in all of his property, testator named five classes of beneficiaries, the first of which was composed of substantially the same group of relatives as named in the deed, but the gift could not be sustained as to that class because it was devoted to a private and non-charitable purpose, *held,* considering the deed and will together, that the real estate described in the deed goes to testator's heirs, and that the residue of the estate should be administered by the trustees for the benefit of the last four classes, each of which were public charities; the fact that the provision as to the first class was invalid not invalidating the trust as to the other classes designated.   p. 656.

From Grant Superior Court; *William H. Eichhorn,* Special Judge.

Action between Harmon D. Reasoner and others, trustees, and Lawson A. Herman and others.   From the judgment rendered, the former appeal.   *Reversed.*

*Charles & Gemmill, Stuart, Hammond & Stuart* and *James D. Connor, Jr.,* for appellants.

*William J. Houck* and *H. M. Elliott,* for appellees.

TOWNSEND, J.—One Peter G. Flinn attempted by deed and by will to create a charitable trust. The trial court held the trust void for uncertainty. The facts were found specially, with conclusions and judgment in favor of the heirs and next of kin. From this judgment the trustees appeal. The questions arise on exceptions to the conclusions of law.

In July, 1893, testator married one Elizabeth Williams. At that time he was a widower; having no children by the previous marriage. Elizabeth Williams, a widow, had two children by a previous marriage. Testator was then about sixty-eight years old, and Elizabeth Williams was about fifty-seven years old. They entered into an antenuptial contract, settling the rights which each was to have in the other's estate. They lived together as husband and wife until the death of testator on January 15, 1904. No children were born of their marriage. In September, 1902, Peter G. Flinn and his wife executed the trust deed in question. In November, 1903, Peter G. Flinn executed the will in question. Elizabeth Flinn, the wife, died in May, 1915.

The trust deed previously referred to is as follows:

"This Indenture Witnesseth, That Peter G. Flinn and Elizabeth K. Flinn, his wife, of Grant County, and State of Indiana, convey and warrant to James D. Conner, Jr. in trust for Elizabeth K. Flinn during her natural life, and at her decease to other beneficiaries as herein stated, of Wabash County, State of Indiana, for the sum of One Dollar, the receipt of which is hereby acknowledged, the following real estate in Grant County, State of Indiana, to-wit: Lots one (1) and Two (2) in Block Twenty-three (23) in the Original plat of the town, now City of Marion.

"Said real estate is conveyed subject to the use

of same by grantor, Peter G. Flinn, during his natural life, and for the following purposes and uses, to-wit: My wife, Elizabeth K. Flinn, shall have possession of and the use and the rents and profits of same during her natural life and we hereby authorize and direct said trustee to turn over to the said Elizabeth K. Flinn, said property and the rents and profits of the same during her natural life. At the decease of said Elizabeth K. Flinn, said trustee shall take charge and control of said real estate and manage and rent and lease same so as to make same as productive as he can and shall perpetually devote the rents and profits of same and pay out of the same as follows:

"First: To the payment of expenses of managing the same and keeping up the repairs and improvements and paying the taxes and insurance and the assessments on same, which he shall have full power and authority to make and pay for.

"Second: To the payment of the sum or such sums of money to such of the brothers and sisters of the said Peter G. Flinn or in the event of their death to such of their living children as in his judgment needs support or should receive the benefit of said income. And we give and grant unto said trustee full power and authority to exercise his judgment as to who shall receive the benefit of said income and full power and authority to select said beneficiaries and his selection and payment shall be conclusive and binding on every one and release him from all further liability as to such payment and the amount so paid out.

"Third: Should there be anything remaining of said fund after the above payments, our trustee is fully empowered to devote the same to such charitable uses as he shall deem advisable and in harmony with my will. And we give and grant unto him full power and authority to do any and all things necessary to carry out and consummate and make effective all the provisions of the trust the same as we could do if living and present. And we give and grant unto him full power and authority to name his successor or successors and failing to do so we authorize and direct the court under whose jurisdiction the estate of the said Peter G. Flinn is settled to name his successor or

successors, who shall have the same authority as herein granted to said trustee named.".

The will, after making provisions for the wife similar to those in the antenuptial contract, provides as follows:

"Item 4th:   I did on the 23" day of September 1902 together with my wife, execute and deliver to James D. Conner, Jr. of Wabash, Indiana, my Trustee, a deed for Lots Numbers one and two in block twenty three (23) in the original plat of the town, now city, of Marion, Indiana.   As to said deed aforesaid, it is my will, and I so will, devise and bequeath that said deed shall be placed of record by my said Trustee after my decease and shall have the full force and effect of an executed and delivered deed.   And it is further my will, that my said Trustee and his successors in said Trust, shall perpetually carry out and perform all the terms and conditions and provisions of said Trust as provided for and disclosed in said deed.   And it is further my will, that if for any reason the distribution of the income derived from said real estate described in said deed, after the decease of my said wife, shall be decreed by a court of competent jurisdiction to be illegal or void under the provisions of said deed, then in that event, it is my will, and I so will, devise and bequeath that after the decease of my said wife and in the event of said decree aforesaid, said real estate and the rents derived from the same shall go into the hands and control of my said Trustees named in this will and their successors in office and be administered and distributed the same as the balance of my estate in their hands, under the terms of this will."

Items five and six contain provisions as to the duties of the executor, not important here to note.

Item seven provides that, as soon as the estate has been administered by his executor, and he shall have made his final report, such executor "shall turn over and pay to my Trustees, all the property and money of every kind and description that shall then be in his

hands or under his control under the terms of this will and take the receipt of said Trustees for the same, and file it with his final report, which the Court having probate jurisdiction of my estate shall accept as a full and complete delivery into the proper hands and under the proper custody of my said estate, and shall release my said Executor from all further liability as such Executor."

Item eight provides that, after the property has been turned over to the trustees, the estate "shall be and remain in the hands of my said Trustees and their successors in office perpetually and forever and that there shall never be any distribution of my said estate except as herein provided, and that the same shall be and remain and be perpetually administered as a trust estate by my Trustees and their successors in office as herein provided, for charitable purposes, under the name of 'The Peter G. Flinn Estate.' "

The ninth item provides that, on certain real estate therein described, the trustees "shall erect and construct and pay for the same out of my estate in their hands and under their control, a five or six story building— The same to be constructed according to plans that may be prepared under my advice and direction and found among my papers, otherwise to be constructed according to plans selected by my said Trustees. While the same is to be subject to the approval of my said Trustees, I suggest that said building be constructed with the following business rooms therein and for the following purposes, to-wit: One store room 44 feet by 132 feet two stories high on the South side and the balance of the space fronting upon the street and not necessary for use as an entrance to the upper floors, be divided into two business rooms and constructed one story high. And on top of said three business rooms that the remaining part of said building be constructed for hotel

purposes or for hotel and such other purposes as in the opinion of my said Trustees will make the same most profitable."

The tenth item is as follows: "It is my will, and I so will, devise and bequeath, that after the building provided for in item 9th of this will is fully completed and paid for, and it is my will that the same be paid for by my Trustees as fast as they can, out of the income derived from the estate in their hands over and above what is necessary for them to retain with which to pay the taxes, Insurance, Assessments, bequests and obligations provided for in this my will and expenses of the same, that my said Trustees take an account once each and every year of the annual income collected from the property and funds in their hands for the previous year and out of the same pay all the then obligations against my estate and the estate in their hands as herein provided and all the expenses of administration up to said time and that the net annual income from said trust estate then found remaining in their hands after paying said obligations aforesaid, be divided into two equal parts; one part of which shall become a part of the trust estate in the hands of my said Trustees and be loaned out at interest or invested in such manner as my said Trustees shall deem advisable and be managed and controlled by my said Trustees the same as the balance of my estate in their hands; and the other part shall be set aside by my said Trustees as a charity fund and be distributed by them as provided in Item 11th of this will."

The eleventh item is as follows:

"Believing that it is my duty to bestow my means and estate so as to accomplish the greatest amount of good and being satisfied that the objects to which I have devoted my said estate, as set out in this my will, are in the highest degree worthy and char

itable, and that great good will be accomplished by my said Trustees through my bequests, it is my will and I so will, devise and bequeath, that after said building provided for in Item 9th of this my will shall be fully completed and paid for as herein provided and after the one-half of the annual net income of the trust estate in the hands of my said Trustees is fully ascertained and set apart for charity as herein provided, that my said Trustees shall distribute and pay out the same to such of the following classes or to any or all of the same as my said Trustees shall select, as I deem each and all who shall come within the following said classes as worthy objects of my said charity and worthy to participate in the same, to-wit:    To such of my brothers and sisters and their wives and husbands and their children as may need, or in the opinion of my said Trustees should receive, any aid or support.

"To such men who reside in Grant County, Indiana, who are past the age of thirty years and who have resided in said County not less than one year and who by reason of accident or want of health are unable to earn their means of support.

"To such poor widows over the age of thirty years of irreproachable character who reside in and have resided in Grant County, Indiana, for not less than one year and who have no certain income.

"To women whose husbands have left them unprovided for without just cause and who are of the age of thirty years and of irreproachable character and have resided not less than one year within Grant County, Indiana.

"To such boys and girls who reside in and have resided not less than one year within Grant County, Indiana, and are seeking to obtain an education and who are without means to accomplish the same may be assisted in such effort.

"And it is my will, and I hereby give and grant unto my said Trustees the absolute and exclusive right, without any interference on the part of any one or of any Court to dictate or control their choice or selection, to determine what persons of the class or classes aforesaid shall be the beneficiaries of said charity fund; and giving and granting unto my said Trustees full power and authority to select said

beneficiaries out of either or all said classes aforesaid and it is my will that the Court having probate jurisdiction of my said estate shall ratify and approve such distributions as my said Trustees shall make of said annual trust fund. And I hereby authorize and empower my said Trustees to call to their aid or assistance in making such distribution of said charity fund such persons or organizations as they shall deem advisable."

The twelfth item is as follows:

"I will and devise and bequeath to my Trustees hereinafter named and to their successors in office, for the purpose of carrying out all the terms and conditions of my will, all the property of every kind and description that shall be or remain in the hands of my Executor hereinafter named, or under his control after said final report and settlement is made by him as herein provided, and all other property of every kind and description not otherwise specifically devised or bequeathed herein or conveyed by said trust deed that belongs to me or in which I have any interest. And it is my will that when said estate and property shall be turned over to my said Trustees by my Executor, that they shall have full and complete charge and control over my entire estate, not herein otherwise provided for, with full and complete power to do any and all things that in their judgment may be necessary to be done, to fully carry out and make effective all the terms and conditions of this my last will and testament, with full power and authority to them to appoint suitable agents to aid them in carrying out all the terms and conditions of this will and in administering their trust and with full power and authority to pay for such services out of the estate in their hands. And I give and grant unto my said Trustees full power and authority to name their respective successor or successors and should they or either of them fail so to do, I hereby authorize and direct the Court having probate jurisdiction at the time of this will, to name and appoint such successor or successors so that the trust shall not lapse and shall remain perpetual for the uses and purposes herein and in said trust deed provided."

The will then appoints James D. Conner, Jr. one of the appellants herein, as executor; and in another item the same James D. Conner, Jr. is appointed trustee, together with Harmon D. Reasoner, also appellant herein.

Appellees contend that nothing vests for charity until the building provided for in the ninth item is erected and paid for out of the income, as provided in the tenth item; that, even then, nothing vests for charity until there is an income from the building; that, in the event there is an income from the building, only one-half of this net income vests for charity. In other words, they contend that these are conditions precedent to the vesting of any part of the estate in the trustees for charitable purposes. And, because the conditions carry the vesting forward to a remote period, the gift fails; because perpetuities apply to gifts for charity as well as to gifts for other purposes, where there is no vesting within the time allowed by law. This principle of law applies, if appellees are correct in their construction of the will.

Now it is conceded that statutes against perpetuities and remoteness have no application after the *corpus* of an estate has vested for charity; for the very nature of a charity is a perpetuity.

The law favors the vesting of estates and wills are construed as creating vested estates, if possible. This applies to the construction of wills generally. A *fortiori*, where a charity is involved, the *cy pres* doctrine of liberal construction will cause courts to be keen to discover whether the main purpose is charity and, if it is, to treat the testator's machinery of administration not as conditions precedent to vesting, but as suggestions regarding the management. And, if his directions as to management are impracticable, unreasonable or unlawful, a court of equity will change tes-

tator's scheme to one that is practicable, reasonable and lawful.

We need not stop to discuss the *cy pres* rule of liberal construction, as applied in this country; nor the prerogative *cy pres* as applied in England. This has been done to the point of satiety; not only in this state, but in all others.

By items 6 and 7 testator gave his estate to his trustees, after the year for administration had passed, to be "perpetually administered as a trust estate
4. * * * for charitable purposes." The twelfth item also vests his estate in his trustees for the purpose of carrying out all the terms and conditions of his will. In the eleventh item, as preamble to naming the classes for whose benefit he has given his property, he asserts his belief, his duty and his purpose with reference to charity. Construing the several clauses of this will together, it seems quite apparent that testator's main purpose was to provide for charity; and not, as appellees contend, to build a hotel and accumulate one-half of the income forever as a monument to himself. To hold as appellees contend, is to subordinate the end to the means, the purpose to the mode of management.

Where a charitable gift vests, a direction for accumulation, being for the management of the fund and not of the essence of the gift, will not, even if
5. invalid, affect the validity of the gift. *Woodruff* v. *Marsh* (1893), 63 Conn. 125, 38 Am. St. 346, 26 Atl. 846; *Ingraham* v. *Ingraham* (1897), 169 Ill. 432, 48 N. E. 561, 49 N. E. 320; *Dexter* v. *Harvard College* (1900), 176 Mass. 192, 57 N. E. 371; *Codman* v. *Brigham* (1905), 187 Mass. 309, 105 Am. St. 394, 72 N. E. 1008; *Philadelphia* v. *Girard* (1863), 45 Pa. 9, 84 Am. Dec. 470; *Odell* v. *Odell* (1865), 10 Allen 1.

Testator by items 9 and 10 gave his conception of the manner in which his estate could be most profitably managed. It was his thought with reference to conditions as he saw them, and as he tried to foresee them. If this has turned out to be impracticable and unprofitable (as appears from the findings), then some other method may be adopted by a court of equity. The property may be sold, the investment changed to one that is profitable. It was testator's thought too, as appears from his will, that one-half of the income should accumulate. This may be allowed or stopped, as the exigencies require. Appellees talk of this accumulation as going through the ages until it becomes a public menace. There is no occasion for alarm; for this may be limited by a court of equity, so that it will not be a public menace, and so that it will best subserve the main purpose, charity.

In the eleventh item testator names five classes to whose relief the income is devoted. That the last four classes are charitable, there can be no question. The care of such will be a public benefit. The persons benefited are vague, uncertain and indefinite, until appointed to receive the benefactions. 2 Perry, Trusts (5th ed.) §710. And these classes are, as near as may be, perennial.

The first class, "to such of my brothers and sisters," etc., is purely private and bound to fail. A devise to trustees "for the aid and support of those of my children and their descendants who may be destitute, and in the opinion of said trustees need such aid," has been held to be purely private and not a public charity. *Kent* v. *Dunham* (1886), 142 Mass. 216, 7 N. E. 730.

Now, while the first class named is bound to fail, it may not fail within the time allowed by law. Testator had brothers and sisters living at his death. The law

does not recognize the possibility of issue extinct while a brother or sister is living. If the trustees should choose to exercise the discretion given them in Item 11, to devote all the income to the brothers and sisters, their wives and husbands, and their children, this might be against perpetuities. When the language of a will is open to such an interpretation, the rule against remoteness is inexorably applied. The rule against perpetuities does not depend upon what actually happens, but what may possibly happen, estimated from the time of the taking effect of a deed or will.

But at this point appellants contend that the testator has merely given a preference to his relatives within the meaning of *In Re MacDowell's Will* (1916), 217 N. Y. 454, 112 N. E. 177; and *Dexter* v. *Harvard College, supra.* But testator has chosen to set out his brothers and sisters, etc., as a distinct charitable class, and has declared that he deems each and all of the classes named charitable. If he had said that when his brothers and sisters, or any of his relatives, came within the last four classes named they should have a preference, it seems to us we would then have a case ruled by the principle contended for by appellants' counsel. In the Dexter case Mr. Calvin Ellis made a bequest to Harvard College for educational purposes, and provided that his relatives should have a preference. In the MacDowell case, Mrs. MacDowell founded "a home for refined, educated, Protestant gentlewomen whose means are small, and whose home is made unhappy, by having to live with relatives, who think them in the way." She then requested that preference of being an inmate of this home should be given to certain relatives and friends, and their descendants. In each of these cases this was held not to invalidate a charity. If testator in the case at bar had given his property to

his trustees to be administered for the poor and needy within Grant county, and had then said that if any of his relatives came within that class they should have the preference, we would then have a case analogous to the Dexter and MacDowell cases, *supra.*

The first class named in the will is so substantially like the class named in the deed that it is fair to assume that the testator would not have provided for this class in his will, had he thought the deed would be upheld. That the deed does not create a charity is plain from what we have already said. That the deed is testamentary in its nature is made to appear by the fourth item of the will. It therefore seems that the testator has, by the deed and the will, given us a token to determine what part of the estate he considered sufficient to take care of the first class. In other words, considering the two instruments together, it is indicated that his will is the same as though he had said that the income from lots One and Two in Block 23, in the original plat of the town, now city of Marion, should be devoted to the first class, and the rest of his estate to the other four classes. By this token we are able to separate this part of his estate, which is devoted to a private and non-charitable purpose, from the part which is to be used for charitable purposes. We therefore hold that the real estate described in the deed goes to the heirs of the testator; that the first class named in the will is not charitable and shall be stricken out; that the rest and residue of the estate shall be administered by the trustees for the benefit of the last four classes, which are charitable.

The judgment of the trial court is reversed, with instructions to restate the conclusions of law according to this opinion and enter judgment thereon.

Ewbank, C. J., not participating.