GRAHAM ET AL. *v.* BERGIN ET AL., TRUSTEES.

*Wills—Charitable trust not invalidated by fusion with private trust, when—Home for aged women established—Life annuities to relatives—Admission of friends and kinswomen —Provisions for accumulation of fund—Trust not defeated by change as to beneficiaries, when.*

1. The fusion of a charitable trust with trusts of a private nature does not invalidate the former where the latter are separable.
2. A charitable trust providing for the establishment and maintenance of a home for aged women is not rendered invalid (a) by the reservation of life annuities to certain relatives out of the income of the trust fund; (b) by provisions for the admission of certain friends and near kinswomen, if needy; (c) by provisions for the admission of certain kinswomen without regard to needs when they are charged with certain duties beneficial to the trust; (d) by provisions for the admission of women for compensation when accommodation therefor is available, and (e) by a limited provision for the accumulation of funds.
3. Limitations in a charitable trust as to age and residence of beneficiaries may be set aside or changed in special instances by the testator without invalidating the general trust, providing the general nature of the charity is maintained.

(Decided May 5, 1923.)

APPEAL: Court of Appeals for Franklin county.

*Mr. Henry A. Williams* and *Mr. M. R. Patterson,* for plaintiff.

*Messrs. Turner & Calland* and *Mr. Henry Gumble,* for the defendant trustees.

ALLREAD, J. This action was brought to invali-

date certain trusts set forth in Item 6 of the will of Virginia W. Gay, and to establish a resulting trust in favor of the heirs. For these purposes, the petition, in our judgment, states a cause of action.

The testatrix was a widow of advanced age, and childless. Her estate amounted, at her death, to about $525,000. By the fourth item of the will she provided $50,000 as a hospital fund to be administered in her home town of Vinton, Iowa. By the fifth item she made certain specific bequests, comparatively small, to relatives and friends. The remainder of her estate was disposed of by the sixth item, which item purports to create a foundation for the construction and maintenance of a "Home for Aged Women." There were certain annuities to the sister, and other relatives, for life, charged against the income of the trust fund, and a provision was made for the accumulation of the fund. The paramount purpose of the sixth item was the trust for the establishment and maintenance of a home for aged women. The institution was to be called the "Virginia Gay Home for Aged Women." It was to be located in, or conveniently near to, Columbus, Ohio. The character of the building and the general management of the trust were provided for in detail. The will evidently was written by a non-lawyer, probably by the testatrix.

The beneficiaries were thus described:

"There are women of reasonable culture and refinement, some of much culture and refinement, who are so unfortunate as to be homeless and without ability to secure one or its comforts and enjoyments. Among these will be found some, it

may be many, of those who have spent the prime of life teaching in our common schools. It is for such as these that reside in the State of Ohio that I desire to establish and endow a suitable 'home' one that shall be for them a home in the truest and best sense of the word. Of such women only those who have attained at least the age of fifty-five years and for any good reason is unable to support herself, or readily charge others with her support, shall be admitted to this 'Home.' ''

Preference is thus given to school teachers. Provision is also made for the admission of suitable women for pay, in case the Home is not filled by the regular beneficiaries. Following the general description of beneficiaries the will provides:

"Either of my two nieces Virginia or Anne P. Graham, shall be admitted to the home on her application and continue resident therein during her pleasure, except for reasons commanding the assent of every trustee. I have two friends, Mary P. Edgerton, of Waterloo, Iowa, and Frances V. Washington, of Washington, District of Columbia —and many worthy near kinswomen. Should any of these friends or near kinswomen be so unfortunate as to be left without adequate means of support or ability to supply such means and there is no one who is legally bound and able to furnish such support and can be readily made to perform such duty then such one shall be admitted to said home without regard to age."

The testatrix also prescribed that if either of these nieces entered the Home she was to observe conditions and report the same to the trustees.

By one of the codicils Mrs. Helen Watson and Mrs. Johanna Tiner were added, and placed upon

an equality with Mary P. Edgerton and Frances
P. Washington.

The validity of the charitable trust is challenged:

(1)    Because private and non-charitable trusts
are mixed therewith.

(2)    Because of the provision for accumulation
of the fund.

The question whether the charitable trust is
vitiated by the inclusion in Item 6 of so-called pri-
vate trusts has been argued pro and con. The re-
spective counsel, with characteristic industry,
learning and ability, have cited and reviewed al-
most a wilderness of cases from the common law,
and from the federal and state courts, dealing
with the mixing and fusion of charitable trusts
with those of a private and personal nature. In
the Court of Common Pleas the case was referred
to Hon. George B. Okey, as Special Master Com-
missioner, who upheld the charitable trust. Upon
exceptions, the Court of Common Pleas, Hon.
Edgar B. Kinkead, presiding, held the charitable
trust invalid because of the fusion therewith of
private bequests and private trusts.

It would be a needless task to undertake to
review or reconcile the general drift of the cited
cases. There is perhaps no branch of the law of
wills upon which there is a wider diversity of opin-
ion in the cases than that involving the validity of
charitable trusts. Before considering cases from
the common law, and from other states, we deem
it important to ascertain the vision which our own
courts employ in the consideration of charitable
trusts. In England the common law favored the
heir and preferred that the estate should flow in
the channels of inheritance. Charitable trusts were

therefore strictly construed, and many were de-
feated for slight or technical reasons. This was
changed by the statute of 43d Elizabeth. While
the statute of 43d Elizabeth was never in force in
Ohio, yet the courts of this state from the begin-
ning adopted the spirit of that statute in uphold-
ing and sustaining charitable trusts.

Judge Ranney, in the case of *Urmey's Exrs.* v.
*Wooden,* 1 Ohio St., 160, held to the rule of favor-
able construction in accordance with the spirit of
the Elizabethan statute. It is significant to note
that Judge Ranney states in the opinion that the
statute of Elizabeth had been construed "with
almost extravagant liberality." The opinion of
Judge Ranney has been approved in all the Ohio
cases, including the recent case of *Palmer* v. *Oiler,*
*Exrx.,* 102 Ohio St., 271. In the latter case, Chief
Justice Marshall, referring to the statute of 43d
Elizabeth, says that under that statute "the ut-
most liberality was exercised in the establishment
and in the administration of charitable trusts."
So that the Ohio cases clearly uphold the rule of
liberal construction in favor of charitable trusts.

Following the case of *Palmer* v. *Oiler,* and evi-
dently considered with it, was the so-called *Sturges
Will case,* reported as *Dirlam, Exr.,* v. *Morrow,* 102
Ohio St., 279. In the *Sturges case* the majority of
the Supreme Court did not undertake to question
the rule of liberal construction, but declared that
the Sturges will was void for uncertainty. We
have a right to infer that the Sturges will was
beyond salvation even by the rule of liberal con-
struction.

The rule of liberal construction having been
clearly and definitely established in this state we

can eliminate cases from other states of a technical nature, or those which follow the common law prior to the statute of Elizabeth.

The doctrine that charitable and non-charitable trusts should not be fused comes from the common law. The reasons were founded, in part at least, upon the statutes of mortmain and those against perpetuities. Charitable trusts naturally run in perpetuity, and are available to an indefinite class falling within the description of the charity. Private trusts, if so connected and fused with the charity as to be a part of it, would carry the benefit of the charity perpetually to private parties, would be invalid under the law against perpetuities, and if inseparably connected with the charity would destroy the charity itself, upon the ground of indefiniteness, the reason being that the nature and extent of the public charity, as contemplated by the donor, could not be determined with certainty.

In 11 Corpus Juris, page 330, the common law is thus stated: "Where charitable purposes are mingled with other purposes, or where the terms used are so broad that they include both charitable and noncharitable purposes, the whole gift fails as a charity for uncertainty."

In the text in Corpus Juris, following this quotation, and in the modern decisions, there is a strong drift away from a strict and technical application of this doctrine, and in favor of a liberal construction to support the charitable trust.

Counsel for plaintiffs insist that the Ohio cases, *Palmer* v. *Oiler* and *Dirlam* v. *Morrow, supra,* are decisive. *Palmer* v. *Oiler* did not involve the fusion of charitable and non-charitable trusts. The

trust in *Palmer* v. *Oiler* was clearly charitable. Counsel rely upon the definition of a charitable trust quoted by Chief Justice Marshall. The main charitable trust in the instant case fully conforms to that definition. Chief Justice Marshall does not attempt to define or state the cases wherein the fusion of charitable and other trusts would invalidate the former. This view is made clear by his dissenting opinion in the case of *Dirlam* v. *Morrow*. If the rule of liberal construction is to be given any scope or application whatever, it must necessarily follow that every reasonable effort should be given to uphold the charitable trust, and that slight or technical departures from the general definition of a charitable trust would not require that the charitable trust be stricken down.

*Dirlam* v. *Morrow* was a case where the provisions for a charitable trust were declared void for uncertainty. Such uncertainty was accentuated "by attaching thereto a private charity which may conflict with the public charities." There is no discussion of the effect of the fusion of public and private charities. There is no intimation that such fusion of itself would destroy the public trust. The court spoke only of the conflict between the public and private trust as accentuating the uncertainty. Neither of these cases goes to the extent of declaring that the mere coexistence of a private trust with a charitable trust invalidates the latter.

It would seem reasonable that the mere coexistence of a charitable trust, legal in itself, with a private trust, also legal, should not defeat the charitable trust unless the two are inseparably commingled. In order to stain or taint the chari-

table trust the private trust must enter into the warp and woof of the former, or be clearly in conflict with it. If the rule of favorable construction is to be applied, a charitable trust should be supported unless a substantial reason exists for its destruction.

In the case now under consideration the objection to the charitable trust involves the following features:

(1) THE LIFE ANNUITIES.

While these are to be paid by the trustees out of the income of the trust estate, yet they are definite and fixed amounts, and the charitable trust proper would be in the excess or residuum. This feature does not in our judgment invalidate the charitable trust. 5 Ruling Case Law, 300; *Wilson* v. *Bank*, 164 Ia., 402; *Wood* v. *Duffs*, 26 R. I., 594; *Eaton* v. *Woman's Home Missionary Society*, 264 Ill., 88; *Utica Trust Co.* v. *Thompson*, 149 N. Y., 392; *Brigham* v. *Peter Bent Brigham Hospital*, 134 Fed., 513; *Buchanan* v. *Kennard*, 234 Mo., 117, and many other cases. In *Palmer* v. *Oiler* and many other Ohio cases the charitable trusts were of remainders and residuums.

The case of *Buchanan* v. *Kennard, supra,* is criticized by counsel as being contrary to the trend of authorities. We think, however, the case harmonizes with the modern cases in states which hold to the rule of favorable construction.

(2) ADMISSIONS OF FRIENDS AND NEAR KINSWOMEN.

These are in the nature of preferences. The provision as to the needs of these beneficiaries as a condition of their admission to the Home is substantially the same as that prescribed for general

beneficiaries. The absence of a limitation as to age and residence in this preferential clause is not fatal. The donor, who founded the charity, had the power, in making preferences, to suspend the general rule as to age and residence. The right of the donor to establish preferences in the administration of a charitable trust is sustained in *Perin* v. *Carey*, 65 U. S., 465. The case of *Perin* v. *Carey* was an Ohio case and decided upon Ohio law. The case involved the foundation for the McMicken University at Cincinnati, Ohio. The donor directed that preferences be given his relatives and descendants. It was held that the provision for preferences did not invalidate the trust. To the same effect are *Dexter* v. *Harvard College*, 176 Mass., 192, and *In re MacDowell*, 217 N. Y., 454.

(3)  NEAR KINSWOMEN.

There is no reference in the will to their descendants. The will speaks as of the date of the death of the testatrix. Moreover, the testatrix speaks in the present—"I have two friends * * * and many near kinswomen." This would indicate a personal relationship. We think it was not intended by the words "near kinswomen" to include descendants not in being at the time the will became effective. Still, even if it does include descendants, on the authority of *Perin* v. *Carey* the provision would not invalidate the charitable trust.

(4)  ADMISSION OF 'VIRGINIA AND ANNA P. GRAHAM.

These nieces stand in a different situation. Their admission is not dependent upon their needs, and it is confidently claimed that the right or

privilege given these nieces is similar to that given the Sturges family in *Dirlam* v. *Morrow*.

We are impressed with the view that there is a difference. Either of the nieces in the instant case was given the right to be admitted to the home upon her own application, subject to removal for reasons assented to by all the trustees. But it must be noted that the will explicitly provides that her admission is to be in a semi-official capacity. If admitted, she would have duties to perform in aid of the trust. She was to be the eyes and ears of the trustees and to make observations and reports. The donor must have considered that her presence would be of material assistance to the trust. The donor had power to name the trustees and we see no reason to deny her the power to name assistants. But if we are wrong in this, and if the Grahams stand as the Sturges children stood in *Dirlam* v. *Morrow,* there is still this difference in the two cases—the charitable trust in the *Sturges case* was void for uncertainty; here the charitable trust, standing alone, is valid. The charitable trust in the instant case being the main and paramount purpose of the sixth item in the will under consideration, and the clause in favor of the admission of the Grahams being incidental, the charitable trust should be sustained, even if the provision for the Grahams should be disregarded. This theory could not have arisen in *Dirlam* v. *Morrow,* because the main trust was void for reasons independent of the private trust. We find that the decided weight of modern cases holds that where a charitable trust is the main feature of a will, minor provisions in conflict therewith, especially those growing out of the administration

of the trust, are to be disregarded. 11 Corpus Juris, page 330; *St. Paul's Church* v. *Attorney General,* 164 Mass., 188; *Staines* v. *Burton,* 17 Utah, 331, and *Beurhaus* v. *Cole,* 94 Wis., 617. 2 Perry on Trusts (6 Ed.), Section 738, says: "But if an estate given to trustees for charity is once vested in them for a lawful purpose, all unlawful conditions, limitations, powers, trusts,. or restraints annexed thereto, as directions for the management of the fund, not of the essence of the gift, will fall away and be simply void, leaving the estate still vested in the trustees to be managed in a legal manner for the purposes of the charity." See also 5 Ruling Case Law, page 299.

*Reasoner* v. *Herman,* 191 Ind., 642, is a recent case and has many features in common with the instant case. The charitable trust was there upheld although the private trust in favor of the brothers and sisters was declared void.

(5) ADMISSION OF WOMEN FOR COMPENSATION IN CASE THE INSTITUTION IS NOT FILLED.

That this clause is not inconsistent with the general charity has been decided in Ohio. *O'Brien, Treas.,* v. *Physicians Hospital Association,* 96 Ohio St., 1. The weight and trend of authority in modern cases in other states are to the same effect. *Beurhaus* v. *Cole, supra; Hart* v. *Taylor,* 301 Ill., 344; *Roosen* v. *Peter Bent Brigham Hospital,* 235 Mass., 66.

(6) ACCUMULATIONS.

The provision, for the accumulation of the fund was not intended to cover an indefinite or unlimited period. The general rule on this subject is that provisions for accumulation do not affect the validity of a charity unless it clearly appears that

the fund is to accumulate indefinitely without an exercise of the charity, or that the will is executory. The law is correctly stated in 5 Ruling Case Law, page 303.

The clause in the will giving relatives and friends the privilege of admission to the Home indicated that the provision for accumulation was not intended to be indefinitely continued. It was contemplated that while there might be reasons for a period of accumulation, such period would be reasonably limited and be within the discretion of the trustees, and this discretion might be reviewed, at the instance of a party interested, in a court of chancery.

The second cause of action seeks the invalidation of the charitable trust upon the ground that the fund now available is inadequate to endow and maintain the charity as prescribed in the will.

In the course of the settlement of the estate of Virginia W. Gay suits to contest the will arose both in Franklin county, Ohio, and Benton county, Iowa. As a result thereof, and in the compromise and settlement of the cases, the fund available under the sixth item has been reduced to about $200,-000. We need not go into the details in respect to cost of purchasing a site, constructing buildings and maintaining the proposed charity. The facts are fully shown in the findings of the master. In our view the insufficiency of the fund does not invalidate the charitable trust. If the fund should be found to be insufficient to execute the trust strictly according to the terms of the will, it may be executed under the legal doctrine known as *cy pres.* In common parlance this would mean

that the fund is to be used in such manner as will most nearly accomplish the purposes of the donor. 11 Corpus Juris, page 363; 5 Ruling Case Law, page 370. Nowhere is the doctrine more forcibly and more pertinently stated than in the recent case of the *Mary Franklin Home for Aged Women* v. *Edson,* 193 Ia., 567. The syllabus is as follows:

"Title to charitable trust property does not, *in the absence of some provision for reversion in the articles of trust,* revert to the donor or to his estate or to his heirs, in the event that the trust cannot, on account of insufficiency of funds, be carried out in the precise manner or on the elaborate scale contemplated or provided by the donor. A court of equity will (1) quiet title against any such hostile claims of reversion, and (2) see to it that the dominant purpose of the trust is carried out as nearly as possible in accordance with the original trust requirements."

This declaration from the home state of the testatrix is reinforced by the case of *In re Mac-Dowell, supra,* and *Hart* v. *Taylor, supra.*

Upon the plea of estoppel set forth in the answer to the second cause of action we agree with the findings and conclusions of the master.

We have gone into the questions presented in this case with very great interest. We might very well have rested our conclusions solely upon the report of the master. In view, however, of the elaborate decision of the judge of the Court of Common Pleas, we deem it proper to express our views more at length. We reach the conclusion that the charitable trust is valid, and must be maintained and executed either in the exact form pre-

scribed by the will, or as nearly so as possible, under the doctrine of *cy pres.*

*Decree accordingly.*

KUNKLE and FERNEDING, JJ., concur.