BARR, TRUSTEE, ET AL. *v.* GEARY, AUDITOR, ET AL.

[No. 11,519. Filed January 29, 1924. Rehearing denied May 15, 1924. Transfer denied October 14, 1924.]

1. APPEAL.—*Where pleadings properly designate plaintiffs as also cross-defendants, an order-book entry omitting one title is not error.*—Where suit was brought by three individuals as trustees under a will, and the heirs of the testatrix and certain public officers filed cross-complaints making such trustees defendants thereto, and the three trustees, designating themselves as "plaintiffs and cross-defendants" and as trustees of the trust created by the will, filed a motion for a new trial, stating therein that, for convenience, they therein and thereafter referred to themselves as "plaintiffs," and the clerk in entering the ruling on said motion referred to them as "plaintiffs" only, the court, in overruling the motion, having acted on the theory that the motion was on behalf of the trustees in their trust capacity, not only as plaintiffs but as defendants to the cross-complaints, the word "plaintiffs" in the order-book entry *held* to be either surplusage or a mis-

# 6 APPELLATE COURT OF INDIANA,

prision of the clerk, and the appeal to have been taken as trustees of the trust created by the will in both capacities, as plaintiffs and as defendants to the cross-complaints. p. 16.

2. APPEAL.—*The theory of trial court as to capacity of parties will be adopted on appeal.*—Where three persons as trustees of a charitable trust under a will prosecuted an action and, as such, were made defendants to cross-complaints, and the trial court and all the parties understood that both as plaintiffs and cross-defendants, they were acting as trustees of said trust, the theory of their capacity on which the case was tried will be adopted on appeal. p. 16.

3. APPEAL.—*The capacity of parties as named in assignment of errors will be sustained by the record if possible.*—In determining whether appellants are named in the assignment of errors in the same capacity as they were parties to the decree, the appellate tribunal will look to the entire record, and be liberal in sustaining the sufficiency of the assignment where the parties were acting in a representative or fiduciary capacity. p. 18.

4. APPEAL.—*Recognition of party as trustee in adversary's pleading, precludes objections on appeal.*—Where parties are designated as "trustees" in their adversary's pleadings without naming the *cestui que trust*, an appeal by the trustees designating themselves in the assignment of errors in the same way, will not be dismissed because of not naming the beneficiary of the trust. p. 18.

5. APPEAL.—*Trustees appealing, presumed to appeal in behalf of trust they represented below.*—Where the only question before the trial court was the validity of a charitable trust created by will, it will be presumed that the trustees, in appealing, do so on behalf of the same trust which they represented in the trial court, although the will created various private trusts. p. 18.

6. APPEAL.—*Appellant's signature to appeal bond not necessary.*—It is not necessary that party appealing sign the appeal bond in the capacity in which he sued or was sued, or that he sign the bond at all. p. 19.

7. CHARITIES.—*Charitable trusts will be liberally construed.*—Charitable trusts are favorites of the law, and will be liberally construed in order to sustain and uphold attempts of persons to donate property to charitable uses; the charitable character of a trust being apparent, all doubts will be resolved in its favor. p. 20.

8. TRUSTS.—*Rule of liberal construction not applicable to private trusts.*—The rule of liberality of construction is not applicable to private trusts. p. 20.

9.  CHARITIES.—*Charitable trust not void for uncertainty of amount when trustees have no discretion but to execute trust.* —In a will providing for payment of testatrix' debts and certain specific legacies, providing for the upkeep of a certain cemetery, and for the payment of annuities to certain persons, a bequest .of the residue to trustees, with directions to manage the same, pay taxes and assessments and costs of administering the trust, and "from the net proceeds derived from said trust," make payment of the designated annuities, pay off a mortgage indebtedness on the home of an uncle of the testatrix, and establish and maintain a memorial home for sick and financially helpless mothers and their babies, was not void for uncertainty in the amount to be used in establishing and maintaining said home, nor because the *corpus* of the trust might be diminished at the discretion of the trustees, as the trustees had no discretion in the matter, but could only carry out the intention of the testatrix as expressed in the will.    p. 21.

10.  CHARITIES.—*Creation of charitable trust held sufficiently definite.*—A provision of a will that "from the net proceeds of a trust" created by the will, the trustees should, "as soon as possible" after testatrix' death, establish and maintain a memorial home for sick and helpless mothers and their babies, did not render the trust void for uncertainty, but merely left it to the discretion of the trustees, subject to judicial control, to determine when sufficient funds were available to carry out the testatrix' intention as to said home, after the payment of certain legacies and annuities out of the same trust fund. p. 25.

11.  CHARITIES.—*Charitable trust from one income not affected by invalidity of trust from another income from which it receives residue.*—A charitable trust in the income from the residue of testatrix' property, after the payment of certain legacies and annuities, was not affected by the invalidity of a trust in forty acres of land devised to trustees with directions to use the income for the upkeep of a designated cemetery, any excess over the amount necessary for that purpose to be turned into the charitable trust, the former being separate and independent from the latter.    p. 25.

12.  CHARITIES.—*Provisions of will construed not to mingle charitable and private trusts.*—Where, in the residuary clause of her will, a testatrix created a charitable trust in the income from the residue of her property, after the payment of certain legacies, annuities, and expenses of administration, and, in another clause, provided that certain land which she had theretofore conveyed to named trustees, for the benefit of cer-

tain beneficiaries, should, on the death of said beneficiaries, be conveyed by the trustees in the deed to the widow and child or children of one of them, if he died leaving a widow or issue, and if he did not leave a widow or issue, such real estate was to remain a part of her estate in the hands of the trustees under the will, the income therefrom to be used for the purposes of the charitable trust, there was no valid objection on the ground that it constituted a mingling of charitable and private trusts.  p. 27.

13.    CHARITIES.—*Charity not confined to relief of poverty or distress.*—Charity is not confined to the relief of poverty or distress, but has a wider signification which embraces the improvement and promotion of the happiness of mankind, and a gift to a public use is not illegal as a charity because it is not for the purpose of relieving poverty.  p. 28.

14.    CHARITIES.—*Specific charitable trust not invalidated by variation at discretion of trustees.*—A bequest to trustees to establish and maintain a home for sick and needy mothers and their babies is not invalidated by a direction to the trustees that, if the income from the estate was sufficient, and the home was not filled with such women and their babies, they were to admit homeless and helpless girls, as such provision constituted a valid charitable bequest.  p. 28.

15.    CHARITIES.—*Additional use does not invalidate a charitable trust.*—A valid bequest to trustees to establish and maintain a home for sick and needy mothers and their babies would not be rendered invalid by a provision authorizing an additional use of the fund which was invalid.  p. 28.

16.    CHARITIES.—*Charitable trust not void for uncertainty of beneficiaries when they may be made certain by the court.*—A bequest to trustees to establish a home for "honest, virtuous, sick and financially helpless mothers" is not void for uncertainty of the beneficiaries, as the courts would have no trouble in ascertaining whether a mother who applies for admission measures up to and belongs to the class designated.  p. 29.

17.    CHARITIES.—*Home for sick and needy mothers and their babies is a public trust.*—A testamentary trust for the establishment and maintenance of a home for sick and needy mothers and their babies is a public trust.  p. 29.

18.    CHARITIES.—*Charitable trust for home for homeless and helpless girls during summer season.*—A testamentary trust for the establishment and maintenance of a memorial home for the testatrix to which homeless and helpless girls from the cities should be admitted during the summer season for an outing or vacation is a valid charitable trust.  p. 30.

19. CHARITIES.—*Residence requirements of entrants to home construed.*—A provision in a will creating a trust for the purpose of establishing a home for sick and needy mothers and their babies which requires a residence in the State of Indiana for one year to entitle an applicant to admission to the home, *held* not to mean one year's residence prior to testatrix' death.    p. 30.

20. PERPETUITIES.—*Rule not applicable to charitable gifts vesting immediately.*—The rule against perpetuities does not apply to gifts for charitable uses where the title vests immediately in charity, and it is immaterial that the trustee is an individual and not a corporation.    p. 30.

21. PERPETUITIES.—*Violation of rule does not affect validity of gift to charity.*—A direction for accumulation forbidden by §9724 Burns 1924, although void, does not necessarily affect the validity of a gift to charity.    p. 30.

22. TAXATION.—*Party claiming exemption has burden of proof.*—Taxation of all property being the rule, a party claiming property exempt therefrom has the burden of showing that his property is in a class which is exempt under the provision of the Constitution.    p. 31.

23. TAXATION.—*Exemption statutes are strictly construed.*—Laws are to be liberally construed in favor of equal taxation, while statutes exempting property from taxation are strictly construed.    p. 31.

24. TAXATION.—*Exemption for charity not applicable where only part of income used for charitable purposes.*—The statute (Acts 1919 p. 198, §5, §10139f Burns' Supp. 1921) exempting from taxation property used and set apart for charitable purposes does not apply to property where only a part of the income therefrom is devoted to charitable purposes and the remainder to purposes other than charity.    p. 33.

From Benton Circuit Court; *Benjamin F. Carr, Special Judge.*

Suit by James R. Barr and others, as trustees under the will of Jennie E. Caldwell, against Sherman N. Geary, Auditor, and others to enjoin the sale of the trust property for taxes. The heirs of the testatrix filed a cross-complaint to quiet title to the property, and obtained a decree to that effect. From the decree, the trustees appeal. *Affirmed in part and reversed in part.*

*Stuart, Simms & Stuart, Jones & Lairy, Ralston, Gates, Lairy, VanNuys & Barnard, Fraser & Isham* and *Korbly & McNutt,* for appellants.

*Gaylord & Sills, Charles M. Snyder, Miller & Dowling, William L. Taylor* and *Burke Walker,* for appellees.

McMAHAN, J.—Jennie E. Caldwell died testate January 20, 1912, the owner of considerable personal property and of more than 6,000 acres of land in Benton county. Her will was probated in the Benton Circuit Court, and her estate was finally settled in 1917, when all the property of said testatrix remaining after the settlement of her estate was transferred and turned over to appellants James R. Barr, Lee Dinwiddie and William C. Compton, who took possession thereof and are now claiming to hold the same for charitable purposes under items 17 and 18 of said will, which items, so far as they affect the questions involved in this appeal, are as follows:

> Item 17: "I hereby will, devise and bequeath to James R. Barr, Lee Dinwiddie and William C. Compton, and the survivor of them, in trust, nevertheless, and upon the conditions of trust herein following all the rest and residue of my property, real, personal and mixed, of every kind and nature, and wheresoever situate; and I direct that said trustee shall manage said property to the best interests of my estate, keep all buildings and fences in good repair, pay all taxes and legal assessments thereon, and all proper expenses of administering the said trust. And from the net proceeds derived from said trust, I will and direct that said Trustees shall pay:"

Here follows provisions for the payment (a) of over $400 a month during life to an aunt, (b) an annuity of $1,000 to a brother-in-law, (c) an annuity for life of $150 to a Mrs. Ford, (d) of $2,000 annually for life to two nieces, (e) of a $2,500 mortgage on the house

of an uncle and (f) one-third of the residue of the net income from the estate to Kathryn M. Sumner during her life and, upon her death, to be paid to William Fowler Sumner during his life.

Item 18. "I hereby will and direct that said Trustees, and the survivor of them if either be then living, and if neither be living, then such Trustees as the Judge of the Benton Circuit Court may appoint, shall, as soon as possible after my death, establish and maintain, by the income from my estate, in the home where I now live near Earl Park, Indiana, a home for sick, helpless mothers and their babes, on conditions hereinafter named; That said Home shall be known as the 'Jennie E. Fowler Caldwell. Memorial Home.' That said Home shall be open and free to all honest, virtuous, sick and financially helpless mothers and their babes, who are and have been for one year or more immediately prior thereto, residents of the State of Indiana. Provided, however, that said Trustees shall select of such sick women and their babes who may apply for admission, those who, in the judgment of said Trustees, are deserving of such admission and care, to the extent of the capacity of said Home. And I further direct said Trustees to admit none who are suffering from, or who shall have a contagious disease of any kind or nature. And I direct that said Trustees shall manage my estate, keep in good repair the buildings thereon, and keep and manage said Home in a manner best calculated for the comfort of such women and children, furnishing to them such medical care and aid and nursing as they may need; and that said Trustees provide for every proper want of such women and babes, while at said Home.

"And I further direct that said Trustees shall, provided the income from my said estate be sufficient, and such home is not filled with such women and their babes, admit homeless, helpless girls, from the cities of Indiana and other parts of Indiana, and especially during the summer season, for an outing or fresh air vacation; which girls shall be selected by such Trustees in the same manner as said women."

After said real estate was turned over to said trustees, it was listed and assessed for taxation, and the taxes not being paid, it had been returned delinquent and the county auditor had advertised the same for sale for the nonpayment of such taxes. A few days before the land was to be sold, "James R. Barr, Lee Dinwiddie and William C. Compton, Trustees of the trust created by the last will and testament of Jennie E. Caldwell for the Jennie E. Fowler Caldwell Memorial Home" filed their complaint against the auditor and treasurer of said county, hereafter referred to as "appellee officers," to enjoin them from selling such real estate for the non-payment of taxes. The complaint charged that the real estate had been devised to said trustees by the last will and testament of Mrs. Caldwell for charitable purposes and that it was being used and applied by them for the benefit of a charitable purpose within this State and was exempt from taxation. Appellee officers filed a cross-complaint naming the plaintiffs and the State of Indiana as defendants, and alleging that the provisions of the will attempting to create a trust for the memorial home were void and asking that the real estate in question be adjudged taxable. The attorney-general appeared for the State and filed a cross-complaint against the original plaintiffs, appellee officers and Abigail H. Hart, Elizabeth H. Bond and James Hawkins, hereafter referred to as appellee heirs, who were alleged to be heirs of the testatrix. The attorney-general by his cross-complaint sought to have the trust declared valid. Barr, Dinwiddie and Compton, plaintiffs and cross-defendants, as "Trustees of the trust created by the last will and testament of Jennie E. Caldwell," filed a motion to strike this cross-complaint from the file. This being overruled, they filed a demurrer and then an answer in which they

were designated as plaintiffs and cross-defendants, trustees created by said will.

Appellee heirs filed a cross-complaint against the attorney-general and Barr, Dinwiddie and Compton "Trustees of the trust created by the last will and testament of Jennie E. Caldwell for a Memorial Home," alleging that they were the owners in fee and as tenants in common of the real estate mentioned in the complaint and asking that their title be quieted and that they have judgment for possession. Plaintiffs and cross-defendants Barr, Dinwiddie and Compton, "Trustees of the trust created by the last will and testament of Jennie E. Caldwell," filed an answer in five paragraphs to this cross-complaint. Appellee heirs later filed an additional cross-complaint against Barr, Dinwiddie and Compton, "Trustees under the last will and testament of Jennie E. Caldwell," in which it was alleged that the estate of Jennie E. Caldwell had been finally settled and that all the real estate described had been conveyed and delivered to "Barr, Compton and Dinwiddie, as trustees under the last will and testament of the said Jennie E. Caldwell"; that all legacies, devises and annuities given in said will had been executed and discharged except an annuity of $1,000 per year to Nellie Fowler as provided for in item 5 of the will, and except also an annuity of $2,000 to Florence Follansbee and Anna Eckstadt as provided in item 17, each of said parties being still in life. It was also alleged that the trust attempted to be created in item 18 of said will providing for the establishment and maintenance of the Jennie E. Fowler Caldwell Memorial Home was null and void, on account of certain designated reasons which will be referred to later in this opinion. A motion to make more specific, a demurrer and answer were successively filed to this cross-complaint by "Plaintiffs and defendants," as "Trustees of

the trust created by the last will and testament of Jennie E. Caldwell."

The court found the facts specially and concluded as a matter of law that the provisions of the will relating to the creation of the trust for the purpose of maintaining the memorial home were void; that the real estate was subject to taxation and that the title of appellee heirs should be quieted as against the three trustees in so far as they claimed to hold the real estate as trustees for the maintenance of said home.

The plaintiffs and cross-defendants, Barr, Compton and Dinwiddie "trustees" filed a motion for a new trial, the opening paragraph of which motion reads as follows: "Said plaintiffs and cross-defendants in the above entitled cause, James R. Barr, William C. Compton and Lee Dinwiddie, Trustees of the trust created by the last will and testament of Jennie E. Caldwell for the Jennie E. Fowler Caldwell Memorial Home, hereinafter for convenience called the plaintiffs, respectfully move the court for a new trial thereof on the following grounds, to wit:     *     *     *"

The order-book entry showing the overruling of this motion states that "plaintiffs and cross-defendants," Barr, Dinwiddie and Compton, "trustees," were present and that "plaintiffs'" motion for a new trial was overruled, to which ruling plaintiffs excepted, and were given time for filing bill of exceptions and appeal bond with certain named sureties. The record also shows that when the court filed the special finding and conclusions of law, that Barr, Dinwiddie and Compton, "trustees, plaintiffs and cross-defendants" separately excepted to each conclusion of law. The appeal bond recites the rendition of the judgment against the same parties, as "trustees, plaintiffs and cross-defendants," and that they, as such "trustees, plaintiffs, and cross-defendants" had appealed. The bill of exceptions con-

taining the evidence purports to be the bill of said Barr, Dinwiddie and Compton, as "trustees, plaintiffs and cross-defendants."

From a decree adjudging the provisions of said will void in so far as it attempted to create a trust for the establishment and maintenance of the memorial home, and quieting the title of appellee heirs as to said trust, Barr, Dinwiddie and Compton appeal. In the assignment of errors, appellants are designated as, "James R. Barr, William C. Compton and Lee Dinwiddie, Trustees of the trust created by the last will and testament of Jennie E. Caldwell," that being the way they were designated in the additional cross-complaint and decree.

Appellee heirs and appellee officers have filed separate motions to dismiss the appeal. These motions are so nearly alike that a ruling on the motion of appellee heirs will dispose of all the questions raised by the other motion.

The reasons stated in the motion of appellee heirs to dismiss briefly stated are: (1) That no one excepted to the action of the court in overruling the motion for a new trial and was given time in which to file bond except the "plaintiffs" and that there was no issue or judgment on any issue between the parties appealing and these heirs in which the appellants were plaintiffs; that no notice of this appeal has been served on appellees. (2) That Barr, Dinwiddie and Compton trustees of the trust created by the will of Mrs. Caldwell for the memorial home were the only plaintiffs, and that they have not assigned error in this court in the capacity in which they brought suit, but have assigned error as "Trustees of the trust created by the last will and testament of Jennie E. Caldwell"; that they never took any exceptions, prayed an appeal or did anything in the capacity in which they, as appellants, assign

error, and that no attempt has been made to give appellees notice of this appeal, although more than ninety days had elapsed since the transcript was filed. (3) That this is an attempted appeal by Barr, Dinwiddie and Compton in their individual capacity and not as trustees of the trust for the memorial home; that, as such individuals, they took no steps to perfect an appeal, and that they assign errors as trustees but do not state the names of those for whose benefit they are appealing.

As hereinbefore stated, Barr, Dinwiddie and Compton filed their complaint in which they alleged that the real estate in question had been devised to them by the will of Mrs. Caldwell in trust for charitable purposes, and sought to enjoin the collection of taxes on such property on the theory that, being devoted to a public charitable purpose, it was not subject to taxation. The cross-complaints of appellee officers and appellee heirs each attacked the validity of the charitable trust mentioned in the complaint. Appellee officers asked that the provisions of the will creating such trust be adjudged to be void, and appellee heirs asked that the charitable trust be decreed void and that their title to the real estate be quieted free from such trust. The only issue other than that of taxation presented to the trial court, whether arising on the complaint or on the cross-complaints, related to the validity of the provisions of items 17 and 18 of Mrs. Caldwell's will creating the trust for the memorial home.

The three trustees, designating themselves as "plaintiffs and cross-defendants," and trustees of the charitable trust as hereinbefore shown, filed their

1, 2. motion for a new trial, stating therein, that, for convenience, they therein and thereafter referred to themselves as "plaintiffs." The plaintiffs and cross-defendants filing this motion were the same persons.

There was but one motion for a new trial filed. That was the motion of the three individuals as trustees of the charitable trust in their trust capacity. The court in overruling this motion acted upon that theory, and the word "plaintiffs" in the order overruling the motion should be treated as surplusage or as referring to and meaning the same three individuals filing the motion and as therein designated as "plaintiffs and cross-defendants." The use of the word "plaintiffs" will therefore be held to be either surplusage or a misprision of the clerk. *First Nat. Bank* v. *Farmers, etc., Bank* (1908), 171 Ind. 323, 333. Any other holding would put the trial court in the position of never having ruled on the motion as an entirety—an improbable situation. After overruling this motion, the court entered a decree against all the parties filing the motion, which, to our mind, indicates that the court understood it had overruled the motion for a new trial as to all the moving parties. The trial court and all the parties understood that Barr, Dinwiddie and Compton were prosecuting their complaint, and defending the cross-complaints, as trustees of the charitable trust created for the benefit of the memorial home. No other trust was involved. There was, in fact, but one question presented to the trial court for determination viz.: Were the provisions in items 17 and 18 relating to the trust for the memorial home valid? While the manner in which reference to this trust and the trustees thereof was not uniform, an examination of the record leaves no doubt that the reference in the pleadings, finding, judgment and motion for a new trial to the trustees, in every instance, was understood by the parties and by the court to have reference to them in their capacity as trustees of the charitable trust for the establishment and maintenance of the memorial home. That was the

theory on which the case was tried and that theory will prevail on appeal. See *Ditton* v. *Hart* (1911), 175 Ind. 181; *Helms* v. *Cook* (1916), 62 Ind. App. 629, 632. Having held, as we do, that the use of the word "plaintiffs" in the order overruling the motion for a new trial is to be treated as surplusage or as a misprision of the clerk, it follows that the necessary steps were taken by the trustees to perfect a term-time appeal by them in their capacity as plaintiffs and as defendants to the cross-complaints.

In determining whether the appellants are named in the assignment of errors in the same capacity as they were parties to the decree, we will look to the entire record, and will be liberal in sustaining the sufficiency of the assignment of errors where the parties are acting in a representative or fiduciary capacity. *Dykeman* v. *Jenkines* (1913), 179 Ind. 549, 555, Ann. Cas. 1915D 1011.

The appellants are designated in the assignment of errors in the same manner as they were designated in the additional cross-complaint of appellee heirs, that being the cross-complaint upon which the judgment quieting the title of said heirs is founded. Where parties are designated in the pleadings as "trustees" without designating the *cestui que* trust, an appeal will not be dismissed because the appellants in their assignment of errors designate themselves the same as they were named in the pleadings below. *Hiatt* v. *McColley* (1908), 171 Ind. 91; *Nisius* v. *Chapman* (1912), 178 Ind. 494, 497.

Appellees say there were a number of private trusts created by Mrs. Caldwell in her will and that it is not possible to tell from the assignment of errors whether the appellants are appealing as trustees of the private trusts, or as trustees of the charitable trust. It is a sufficient answer to this contention

to say that no question was before the trial court affecting any of the so-called private trusts. The issues before the court related only to the validity of the charitable trust. It will, therefore, be presumed that the trustees in appealing do so in behalf of the same trust which they represented in the trial court. Appellants were only affected by the judgment below in their capacity as trustees of the charitable trust. The record clearly shows this appeal is being prosecuted by appellants in their fiduciary capacity for the purpose of reversing the judgment decreeing and adjudging that trust to be void. All the parties affected by that decree are before the court. The contention of appellees that the appeal must be dismissed because appellants are not designated as the trustees for the memorial home in the same manner as they were designated in the title of the original complaint is not well taken.

Appellees further contend that the appeal must be dismissed because the appeal bond was not signed by the plaintiffs in the capacity in which they sued.

6. But it is not necessary that a party appealing sign the appeal bond in the capacity in which he sues or is sued, or that he sign the bond at all. *Railsback* v. *Greve* (1877), 58 Ind. 72; *Hinkle* v. *Holmes* (1882), 85 Ind. 405; *Majenica Tel. Co.* v. *Rogers* (1909), 43 Ind. App. 306; *Supreme Council, etc.,* v. *Boyle* (1896), 15 Ind. App. 343, 345.

What we have said is sufficient to dispose of all the specifications in the motion to dismiss the appeal. The several motions to dismiss are overruled.

Appellees contend that the trust attempted to be created for memorial home is invalid for the following reasons: (1) The subject-matter of the trust is uncertain; (2) the class of beneficiaries is uncertain; (3) that the charity is not of a public character; (4) that

it is not enforceable by judicial decree, but rests in the uncontrolled discretion of the trustees; (5) that it violates the rule against perpetuities and the statute forbidding accumulations; and (6) that it is against public policy.

In support of the first contention, appellees say: (a) That the provisions of the will are vague and uncertain as to the *corpus* of the estate on which the income applicable to the home is to be computed; (b) that the *corpus* of the trust is indefinite because it is diminishable at the discretion of the trustees; (c) that the provisions of items 17 and 19 of the will are antagonistic with respect to the disposition of the income from certain land; (d) that the trust is uncertain because of different instructions given the trustees in items 17 and 18; (e) that the requirement that the home be established as soon as possible after the death of the testatrix makes it uncertain; and (f) that the will attempts to combine charitable with non-charitable trusts.

In considering these objections, we must keep in mind that a charitable trust is a favorite of the law, and that the most liberal rules of construction will 7. be employed to sustain and uphold every attempt · of a person to donate his property to a charitable use. The charitable character of the trust being made apparent, all doubts will be resolved in its favor. *Dykeman* v. *Jenkines, supra; Board, etc.,* v. *Dinwiddie* (1894), 139 Ind. 128; *Erskine* v. *Whitehead, Exr.* (1882), 84 Ind. 357; *Reasoner* v. *Herman* (1922), 191 Ind. 642; *Richards* v. *Wilson* (1916), 185 Ind. 335, 384.

Appellees cite 26 R. C. L. 1183; 39 Cyc 34; 28 Am. & Ency. Law (2d ed.) 865; *Holsapple* v. *Shrontz* (1917), 65 Ind. App. 390; *Nesbitt* v. *Stevens* (1903), 161 8. Ind. 519, and other authorities in support of the contention that the property must be clearly and definitely pointed out. The authorities cited all relate

Barr, Trustee, *v.* Geary, Auditor—82 Ind. App. 5.

to private trusts—a class of trusts where the rule of liberal construction in order to sustain the trust does not apply.

Appellees also call attention to the provision in item 18 providing that the trustees shall establish and maintain the home from "the income" of the estate and say that nothing was said about a "part of the income," "net income" or "income from a part of the estate," and that the language is broad enough to include all of the estate and all of the income from all of the estate. Appellees seemingly overlook the fact that the testatrix, by the first sixteen items of her will, made provision for the payment of her debts, disposed of a large portion of her personal property, including heirlooms, made provisions for certain relatives, rewarded employees and business associates, either with money or real estate, or the right to purchase certain real estate on favorable terms, and provided for the upkeep and maintenance of a burial ground. By item five, she bequeathed to her niece Nellie Fowler, for life, an annuity of $1,000, "to be paid out of my estate, annually, by the trustees hereinafter named." By item seven, she gave Barr, Dinwiddie and Compton a certain forty acre tract of land in trust, to be rented by them, and, after paying the taxes, repairs and expenses of management, to use the net income for the maintenance of a certain burial ground, and if the income was more than required to maintain the cemetery, to pay the "residue of said net income from said forty acres of land to the bulk of my estate, to be disposed of as hereinafter set forth." By item eight, she gave Barr, Compton and Dinwiddie, as trustees, $10,000, with directions to invest as they deemed best and to pay the net proceeds thereof to Mrs. Mamie Huffman during her lifetime, and at her death to pay the $10,000 to the then living children of Mrs.

Huffman as they reached the age of twenty-one. By item seventeen, she gave "all the rest and residue of my property, real, personal and mixed" to the three named trustees, with directions to manage the same, to keep all buildings and fences in repair, to pay taxes and assessments and costs of administering the trust, and, from the "net proceeds derived from said trust," make payment of designated annuities to certain persons during life and to pay off a mortgage indebtedness of $2,500 on the home of an uncle. Item 18 provided that the trustees establish and maintain "by (from) the income" of her estate the memorial home. The $1,000 annuity payable to Nellie Fowler and the $10,000 devised to the trustees for Mrs. Huffman and her children were first carved out of the estate of the testatrix for the purposes therein designated. The trust created by item 7 for the upkeep of the cemetery is entirely separate and independent of the trusts created in items 17 and 18. The validity or invalidity of the trust for cemetery purposes does not affect the question as to the validity of the other trusts. The validity of the cemetery trusts and to whom the forty acres of land would go if that trust be invalid are not before us for determination and we express no opinion as to that question. We note, however, that there is nothing in the record to show whether the cemetery in question is public or private. Nor are we required to decide whether the $1,000 annuity provided for Miss Fowler in item 5 shall be paid out of the *corpus* of the estate or out of the income of the property in the hands of the trustees. It is clear, however, that the bequests provided for in item 17 are to be paid out of the net income derived from the property in the hands of the trustees, and that the whole of the net income remaining shall be used for the memorial home. While the exact amount in dollars and cents cannot be foretold

to a certainty in advance, as the total net income from the trust property will vary from year to year, so the income to be devoted to the memorial home will vary from year to year, not because the trustees have any discretion in the matter, other than their discretion as to the management of the property.

Item 19 which appellees say is antagonistic to item 17 to the extent that it renders the trust void for uncertainty, after reciting that the testatrix, prior to the execution of the will, had by deed conveyed to Barr and Dinwiddie a certain tract of land in trust, one of the conditions of said trust being that, in the event of the death of Kathryn M. Sumner and William Fowler Sumner, the two trustees therein named should convey said land to the trustees named in her will, devised and directed, in the event of the death of Kathryn M. Sumner and William Fowler Sumner and the reconveyance of said land to the trustees named in the will, that said last named trustees should convey said land to the widow and lawful issue of William Fowler Sumner, if any, but if he left no widow or issue, the said real estate was to remain a part of the testator's estate and the income therefrom to be used to help maintain the memorial home in the same manner as the rest of her estate. William Fowler Sumner died prior to the death of the testatrix and left no widow or issue. The evident intent of the testatrix, as expressed in item 19, was that, when the trust which had been created by the deed had been fully executed, the real estate there involved should become a part of her estate or property in the hands of the three trustees named in her will, that the same should be held by them in the same manner and under the same conditions as they held the balance of the property under item 17, and that the income therefrom should be used to maintain the home in the same manner as the income from the other prop-

erty. In any event, the trustees are to be guided by the intention of the testatrix and not by their inclination. What the intention of the testatrix was is a question of law. The trustees have no discretion in the matter. Their duty is to follow the expressed intent of the testatrix. If in doubt as to what that intent is, they have their legal remedy by petition for construction to the proper court. Appellees' contention that the income available for the memorial home may be diminished or changed by the discretionary acts of the trustees in using a part of the *corpus* of the estate in their hands, or in using the income, or a part of the income and a part of the principal, for the purpose of paying annuities cannot prevail. The legacies mentioned in item 17 are all to be paid out of the net income. Nor do we think the trustees have any discretion as to the fund or property from which they are to pay the $1,000 annuity to Miss Fowler as provided in item 5, but, as before stated, we are not called upon at this time to decide that question. We are clear, however, that the provisions in that regard are not so uncertain as to render the trust created for the memorial home void.

*Tilden* v. *Green* (1891), 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. 487, cited by appellees is readily distinguished from the instant case. There the testator created an active trust in the whole of his estate for private purposes and then gave his executors discretionary power to give such part of it as they deemed expedient to a certain charitable trust or to withhold all from it. No such discretionary power was given the trustees in the instant case.

In *Mills* v. *Newberry* (1885), 112 Ill. 123, 1 N. E. 156, 54 Am. Rep. 213, the testatrix gave certain property to her mother absolutely, and then provided that so much of the property, so devised to her mother, as "re-

mained undisposed of and unspent" at the death of the mother was to be given in trust for charity. The testatrix in that case having given the whole of the property to her mother there was nothing left for charity. The mother had the absolute right to dispose of or spend the whole of the property and, for that reason, the attempt to create a trust failed. No specific property was there set aside for charitable purposes. In the instant case, the testatrix did set aside certain property for that purpose.

The directions in item 18 that the trustees should as soon as possible after the death of the testatrix establish and maintain the memorial home does not

10. render the trust void for uncertainty. The testatrix had in mind that she had already made provision for the payment of certain legacies and annuities out of the income of the property and not knowing when sufficient money would be available for the establishment and maintenance of the home, she intentionally left the time when the trustees should establish the home to their judgment, subject, of course, to judicial control.

Appellees next contend that the will fails to create a valid gift to charity because it attempts to combine the charitable bequest with others which are non-

11. charitable. Appellees, in their presentation of this as well as in the presentation of their other contentions, overlook the rule of liberal construction in order to uphold the charitable trust and seek to apply the rule of strict construction in order to defeat a charitable trust. They say that the income named in items 18 and 19 is not indicated as a part of the income after certain other bequests are satisfied, nor as a residue and remainder of income, but is the entire income; that in items 7 and 17, she referred to the residue of net income; that the income

mentioned in item 18 is to be used not only for the home but may be devoted to private trusts also; that there are at least four private trusts all of which are so mingled with the charitable trust as to render it impossible to say how the funds shall be apportioned. The trusts referred to by appellees which they say render the trust created by items 17 and 18 for the memorial home invalid, are: (1) the trust created by item 7, where forty acres of land is given the same three individuals as trustees for the upkeep of the cemetery; (2) the trust for the payment of the annuities and legacies mentioned in item 17; (3) the trust referred to in item 19 requiring the two trustees, Barr and Dinwiddie, on the death of Kathryn and William Fowler Sumner, to convey said forty acres to the three trustees named in the will, and providing that the income therefrom be used to help maintain the home; and (4) the provision in item 18 directing the trustees, if the income from the estate is sufficient and if there be room in the home, to admit homeless and helpless girls. If it be conceded that the trust for the burial ground is a private trust and not valid, that trust, however, is separate and independent of the trust created for the home. Item 7 may be declared invalid as a whole without in any manner affecting the validity of the trust created for the memorial home. The aggregate of the funds available for the home, would, in that event, be reduced by the amount of the income from the forty acres left after the maintenance of the cemetery. This would not be because of anything in item 17 and 18 creating the trust for the home, but because of the invalidity of the trust attempted to be created for cemetery purposes.

Item 19 relates to a trust created by deed prior to the execution of the will, wherein it was provided that the real estate there involved, consisting of 640 acres,

should, on the death of the beneficiaries, be conveyed by the trustees therein named to the three trustees named in the will. The conditions under which the two trustees should hold that tract of land are not disclosed, although it may be inferred that they were to hold it subject to the right of Mrs. Caldwell to dispose of the remainder or reversionary interest by deed or by will, since she did, in item 19, making provision for the conveyance of such real estate to the widow and children of one of the beneficiaries, William F. Sumner, if he died leaving a widow and children, with the further provision that if said William F. should not leave a widow or issue, such real estate was to remain a part of her estate in the hands of the trustees, the income therefrom to be used to maintain the home in the same manner as the remainder of the estate in the hands of the trustees. This is by virtue of the will and not by reason of any provision in the trust deed. No question is made as to the validity of the provisions made in this item in so far as it provides for a conveyance to the widow and children, and we see no objection to either that provision or to the provision giving the reversionary interest to the trustees for the use of the home.

Does the direction as to the admission of homeless and helpless girls under the trust for the memorial home make it invalid? In *Bowditch* v. *Attorney General* (1922), 241 Mass. 168, 134 N. E. 796, the testator gave the residue of his estate to a trustee and, after the payment of certain annuities, the balance of the income was to be divided by the trustee into three equal parts and expended or given away by him in such manner as in his judgment would best promote the following causes: (1) women's rights; (2) temperance; and (3) "the best interests of sewing girls in Boston." The bequest to promote women's rights was held invalid,

while the other two were upheld. In discussing the trust in the interest of sewing girls, the court said: "The trust to promote 'the best interests of Sewing Girls in Boston' is for a charitable purpose. It applies to an indefinite number of a particular class and the purpose of the testator is sufficiently certain and defined: manifestly it is a valid charity. Sewing girls are handicraftsmen, and the word 'girls' implies youth. The clause 'best interest' includes not only the relief of poverty and distress, but has a broader signification, and well may comprehend within its spirit and intendment whatever adds to their welfare and advancement and enables them to establish themself in life."

The gift to a public use is not unlawful as a charity because it is not for the purpose of relieving poverty. Such gifts may extend to the rich as well as to the poor. Charity is not confined to the relief of poverty or distress, but has a wider signification, which embraces the improvement and promotion of the happiness of mankind. *New England Sanitarium* v. *Stoneham* (1909), 205 Mass. 335, 91 N. E. 385; *Bowditch* v. *Attorney-General, supra.*

We are well within the holding of the case last cited when we hold the provisions relative to the admission of homeless and helpless girls to the memorial home is a charitable bequest. We are not ready to say that giving such girls a short period of rest in a home or institution where their comfort and health may be looked after, and where they can be given "such medical care and aid and nursing as they may need," and where their "every proper want" is provided, would not add to their welfare and advancement and better enable them to establish themselves in life. Homeless and helpless girls ought to be and are objects of charity in no less degree than sick and helpless mothers. The testatrix appreciated that there

were homeless and helpless girls whose health and physical condition were such that an "outing or fresh air vacation" in such an institution as she, by her will, was providing for would promote and improve their happiness and better enable them to establish themselves in life. The provision for the benefit of "homeless and helpless" girls does not in our judgment make the trust for the home void, and we so hold. Courts are and should be keen sighted to discover on the part of the testator an intention to make a gift to charity. *Re Galland's Estate* (1918), 103 Wash. 106, 173 Pac. 740. Even though the provision relative to homeless and helpless girls should be invalid, that would not necessarily render the trust for the memorial home invalid. *Reasoner* v. *Herman, supra; In re MacDowell* (1916), 217 N. Y. 454, 112 N. E. 177, L. R. A. 1916E 1246, Ann. Cas. 1917E 853.

Appellees make no claim that helpless mothers and their babes are not proper objects of charity, or that a trust for them would be void. They do claim, however, that the provision, "That said home shall be open and free to all honest, virtuous, sick and financially helpless mothers" renders the beneficiaries uncertain and not capable of judicial enforcement. We do not think the courts will have any trouble in ascertaining whether a mother who applies for admission measures up to and belongs to the class designated by the testatrix. Whether a mother is honest and virtuous is not so unascertainable as to render the trust void. That the provisions of the will are sufficiently certain as to the beneficiaries, see, *Board, etc.,* v. *Rogers* (1876), 55 Ind. 297; *DeBruler* v. *Ferguson, Admr.* (1876), 54 Ind. 549; *McCord* v. *Ochiltree* (1846), 8 Blackf. 15; *Board, etc.,* v. *Dinwiddie, supra; Chambers* v. *City of St. Louis* (1860), 29 Mo. 543; *In re MacDowell, supra.* Nor do we agree with

appellees in their contention that the trust for the memorial home is not a public trust.

In *Gibson* v. *Frye Institute* (1916), 137 Tenn. 452, 193 S. W. 1059, L. R. A. 1917D 1062, the object of the trust was to erect "a building provided with 18. rooms for a library, dancing hall, lecture halls, and other rooms for good moral amusement," for the free use of the working men and women of a certain city and their families. The court in that case said: "It cannot be doubted that a proper form of dancing is good physical exercise, and tends to promote health and vigor." So here, the admission of homeless and helpless girls to the home for an outing or fresh air vacation, where they can have such medical care and nursing as they may need, will tend to promote their health, vigor and morality. It might also be said that the admission of such girls to the home will have a tendency to keep them away from vicious places of amusement and thus serve a useful governmental purpose. If this provision has a tendency to relieve the bodies of an indefinite number of persons from disease, suffering or constraints by assisting them to establish themselves in life, it is sufficient to create a charitable trust, as defined in the leading case of *Jackson* v. *Phillips* (1867), 14 Allen (Mass.) 539, 556.

We cannot agree with appellees in their contention that the provision requiring residence for one year in order to entitle an applicant to be admitted to 19. the home requires residence for one year prior to the death of Mrs. Caldwell. The requirement is that they shall have been a resident of this state at least one year prior to their admission.

Appellees' next contention is that the provision of the will creating the trust for the home violates 20, 21. the statute against perpetuities, §3998 Burns 1914, §2962 R. S. 1881, and the statute forbid-

ding accumulations, §9724 Burns 1914. In support of this contention, appellees say that our statute against restraint of alienation is derived from the statute of New York, and that, under the decisions of that state, the gift to the three individual trustees for the memorial home is void." But we need not enter into a discussion of the New York cases cited by appellees. It is well settled in this state that the rule against perpetuities does not apply to gifts for charitable uses where the title vests immediately in charity as in the instant case. *Dykeman* v. *Jenkines, supra.* And the rule has been applied where the trustee was an individual and not a corporation. *Reasoner* v. *Herman, supra.* See, also, *Ex parte Lindley, Exr.* (1869), 32 Ind. 367; *DeBruler* v. *Ferguson, Admr., supra; Erskine* v. *Whitehead, Exr., supra; Jansen* v. *Godair* (1920), 292 Ill. 364, 127 N. E. 97. Appellees have failed to point out any direction in the will for the accumulation of funds and we find none. But a direction for accumulation does not necessarily affect the validity of the gift. *Reasoner* v. *Herman, supra.*

We hold that the subject-matter of the trust is definite; that the beneficiaries are sufficiently described and that the trust created in their behalf is valid. *Ackerman* v. *Fitchter* (1913), 179 Ind. 392, 46 L. R. A. (N. S.) 221, Ann. Cas. 1915D 1117; *Dykeman* v. *Jenkines, supra; Barker* v. *Town of Petersburg* (1907), 41 Ind. App. 447; *Hart* v. *Taylor* (1921), 301 Ill. 344, 133 N. E. 857.

Having held the trust valid the question of estoppel raised by appellants becomes immaterial and need not be considered.

The next question for our consideration relates to the question of taxation. Article 10, §1, of the Constitution directs the legislature to provide for a uniform and equal rate of assessment and taxation for all property excepting only such as is used

for "municipal, literary, scientific, religious, or charitable purposes, as may be specially exempted by law." Taxation being the rule, a party claiming exemption from taxation has the burden of showing that his property comes within some one of the classes of property which the Constitution says is exempt. Laws are to be liberally construed in favor of equal taxation, while statutes exempting property from taxation are strictly construed. *La Fountain Lodge, etc.,* v. *Eviston, Aud.* (1919), 71 Ind. App. 445, 123 N. E. 418; *U. B. Pub. Establishment* v. *Shaffer, Treas.* (1919), 74 Ind. App. 178; *Oak Hill Cemetery* v. *Wells* (1906), 38 Ind. App. 479, 78 N. E. 350; *Greenbush Cemetery Assn.* v. *Van Natta* (1911), 49 Ind. App. 192; *Orr* v. *Baker* (1853), 4 Ind. 86; *City of Indianapolis* v. *Grand Master, etc.* (1865), 25 Ind. 518; *Trustees, etc.,* v. *Ellis* (1871), 38 Ind. 3. With these rules in mind we proceed to a consideration of the statutes under which appellants claim the real estate in question to be exempt from taxation.

Section 10142 Burns 1914, Acts 1891 p. 199, provides that: "All property within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." Section 10144, clause 5, Burns 1914, Acts 1893 p. 12, provides for the exemption from taxation of, "Every building used and set apart for educational, literary, scientific or charitable purposes by any institution, or by any individual or individuals, association or incorporation, or used for the same purpose by any town, township, city or county, and the tract of land on which such building is situate; also the lands purchased with the *bona fide* intention of erecting buildings for such use thereon, not exceeding forty acres; also the personal property, endowment funds and interest thereon, belonging to any institution, town, township, city or county, and connected with, used or set apart for any of the purposes aforesaid." Clause 5, in so far

as it relates to the question now under consideration, was carried forward and became a part of the law of 1919, Acts 1919 p. 199.

Section 10151a Burns 1914, Acts 1913 p. 57, provides: "That when any money or property is given by will, or otherwise, to any executor or other trustee to be by him used and applied for the use and benefit of any municipal, educational, literary, scientific, religious, or charitable purpose within the State of Indiana, and the money or property, if it had been given directly for any such purpose, would not be subject to taxation under existing laws, then and in all such cases, such money or property shall be exempt from all taxation while in the hands of such executor or other trustee; Provided, He shall be diligently and in good faith endeavoring to carry out the provisions of the will or other trust arrangement, and to use and apply such money or property to the purpose for which the same is donated." This section in substance became clause 14 of §5 of the tax law of 1919, Acts 1919 p. 198.

It will be observed that under the provisions of §10144, cl. 5, Burns 1914, *supra,* every building used and set apart for charitable purposes by any institution, individual, association or incorporation and the tract of land on which such building is situated shall be exempt from taxation. The real estate described in the complaint and which appellants claim as exempt amounts to about 2,800 acres located in sections 21, 22, 26, 27, 28 and 30 in township 26 range 9 west. The memorial home is located in the northeast corner of the northeast quarter of the southeast quarter of section 22. The whole of this land except about three acres where the house is situated is devoted to agricultural purposes, and the whole of the income is subject to be taken and applied to the pay-

ment of the annuities. One-third of the net income after paying the annuities is to be paid to Kathryn M. Sumner annually during her lifetime and the residue and remainder of the net income is to be used for establishing and maintaining the memorial home. How this land is divided by highways, and for farming purposes, we are not advised, although it appears that section 22 is traversed by a railroad and that the tract on which the memorial home is located lies north and east of this railroad. It also appears that there are eight tenant houses on the property. It may be, and we will assume that the memorial home and the three acres on which it is located are used and set apart for the home and devoted wholly to charitable purposes. But the balance of the 2,800 acres is not set apart and used exclusively for charitable purposes, and therefore, is not exempt from taxation by reason of the provisions of clause 5, §10144 Burns 1914, *supra.* This clause does not provide for the exemption of property from taxation where only a part of the income derived therefrom is devoted to charitable purposes and the balance to purposes other than charity.

Nor is the land under the facts found exempt from taxation by reason of the provisions of §10151a Burns 1914, *supra,* or clause 14 of §5, Acts 1919 p. 198. Under these sections the property must be given to the trustee to be by him used and applied for the use and benefit of some municipal, educational, literary, scientific, religious or charitable purpose. It was clearly the intention of the legislature that the property must be exclusive and wholly used and applied for some of the purposes named, in order to be exempt from taxation. It must be used purely for charitable purposes. Any other construction would permit a person to provide for the payment of annuities which would require practically the whole of the income of the property leaving for all

practical purposes nothing to be used and applied to charity, and thus exempt the whole of the property from taxation. Exemption from taxation must positively appear, and no implication will arise that any species of property, or subject of taxation was intended to be excluded if it comes within the fair purview of the statute imposing the tax. *English* v. *Crenshaw* (1908), 120 Tenn. 531, 110 S. W. 210, 17 L. R. A. (N. S.) 753, 127 Am. St. 1025.

These sections also require that the trustee diligently and in good faith endeavor to carry out the provisions of the trust arrangement in order that the property shall be exempt from taxation. The court found that appellants were not diligently and in good faith endeavoring to carry out the provisions of the will and were not using and applying the income or property to the purpose for which it was donated.

The court did not err in its third and fourth conclusions of law, which were to the effect that the property was not exempt from taxation and that appellants were not entitled to a judgment or decree against appellee officers enjoining the collection of the taxes. The court however, did err in its first conclusion of law, which was to the effect that the provisions of the will creating the trust for the establishment and maintenance of the memorial home were void. It follows that the court also erred in conclusions Nos. 2, 6, 10, 11, 12, 13 and 14, all of which related to the right of appellee heirs to have their title quieted as to the charitable trust.

Appellants insist that the finding of the court to the effect that they were not diligently and in good faith endeavoring to carry out the provisions of the trust arrangement is not sustained by the evidence. As we construe the statutes under which appellants claim the property to be exempt from taxation, it would not have

changed the result, if the court had found that appellants were diligently and in good faith endeavoring to carry out the trust arrangements. Appellants also contend that the special finding of facts is in many other respects not sustained by the evidence. But if all the finding of facts to which appellants take exceptions were stricken out, or if the facts were found in accordance with appellants' contention the result would not be changed. There was therefore, no reversible error in overruling the motion for a new trial. Minerva H. Ditton having died intestate after the filing of her cross-complaint, her heirs William L., James H., and Jay Sumner Ditton were substituted and made parties to the action in her place.

The judgment in favor of appellee officers is affirmed, while the judgment in favor of appellee heirs is reversed, with directions to the trial court to restate its conclusions of law in accordance with this opinion and to render a judgment in favor of appellants on the cross-complaint of appellee heirs. One-half of the costs to be taxed against appellants and one-half against appellees, Abigail H. Hart, Elizabeth H. Bond, Martha J. Jewell, William C. Ditton, James H. Ditton, and J. Sumner Ditton.